181 So.2d 493

**Ex parte Wyatt Tee Walker et al.**

**In re Wyatt Tee WALKER et al.**

**v.**

**CITY OF BIRMINGHAM.**

**6 Div. 999.**

Supreme Court of Alabama.

Dec. 9, 1965.

Rehearing Denied Jan. 20. 1966.

J. M. Breckenridge and Earl McBee, Birmingham, for respondent.

Arthur D. Shores and Orzell Billingsley, Jr., Birmingham, Norman C. Amaker, Leroy Clark, Jack Greenberg and Constance Baker Motley, New York City, for petitioners.

COLEMAN, Justice.

We review by certiorari convictions of petitioners for criminal contempt for violating a temporary injunction issued by the Circuit Court of Jefferson County, in equity.

On April 10, 1963, the City of Birmingham, a municipal corporation, presented its verified bill of complaint to one of the judges of the Tenth Judicial Circuit. The bill prayed for temporary and permanent injunctions. The judge to whom the bill was presented ordered the temporary injunction to issue upon the City's making bond for $2,500.00. The prescribed bond was filed and injunction issued out of the circuit court and was served on certain of petitioners.

The return of the sheriff shows that a copy of the injunction was personally served on petitioners as follows:

On Martin Luther King, A. D. King, F. L. Shuttlesworth, Wyatt Tee Walker, and Ralph Abernathy on April 11, 1963, at 1:00 a. m.;

On John Thomas Porter on April 12, 1963, at 4:13 p. m.; and

On N. H. Smith, Jr. on April 15, 1963, at 8:35 a. m.

We have not found a return of the sheriff showing service on the other petitioners who were adjudged to be in contempt. Notice to those not personally served is hereinafter discussed.

The injunction recites in part as follows:

"THESE, THEREFORE, are to temporarily Enjoin you Wyatt Tee Walker; Ralph Abernathy; Al Hibler; F. L. Shuttlesworth; Martin Luther King, Jr.; Aberham Woods, Jr.; Calvin Woods; A. D. King; Alabama Christian Movement for Human Rights by serving copy on Fred L. Shuttlesworth as President, and all other persons in active concert or participation with the respondents to this action and all persons having notice of this action from engaging, sponsoring, inciting or encouraging mass street parades or mass processions or like demonstrations without a permit, trespass on private property after being warned to leave the premises by the owner or person in possession of said private property, congregating on the street or public places into mobs, and unlawfully picketing business establishments or public buildings in the City of Birmingham Jefferson County, State of Alabama or performing acts calculated to cause breaches of the peace in the City of Birmingham, Jefferson County, in the State of Alabama or from conspiring to engage in unlawful street parades, unlawful processions, unlawful demonstrations, unlawful boycotts, unlawful trespasses, and unlawful picketing or other like unlawful conduct or from violating the ordinances of the City of Birmingham and the Statutes of the State of Alabama or from doing any acts designed to consumate (sic) conspiracies to engage in said unlawful acts of parading, demonstrating, boycotting, trespassing and picketing or other unlawful acts,

or from engaging in acts and conduct customarily known as 'Kneel-In's' in churches in violation of the wishes and desires of said churches, until further orders from this Court; and this you will in no wise omit under penalty, etc."

On April 11, 12, and 13, 1963, certain meetings were held at which some or all of petitioners were present.

On April 11, 1963, "The Revs. King, Abernathy, and Shuttlesworth were seated at the round table." Several copies of "a news bulletin put out by the Alabama Christians for Human Rights" were brought there by "Rev. Wyatt Tee Walker." After the bulletin was distributed to members of the press, " * * * Rev. Martin Luther King took one copy of it and read verbatim the entire text." The paper he read appears in the record as follows:

"COMPLAINANT'S EXHIBIT 2
"NEWS · from

"ALABAMA CHRISTIAN MOVE-
MENT FOR HUMAN RIGHTS
5051/2 No. 17th Street
B'ham, Ala.

"FOR RELEASE        12:00 Noon,
April 11, 1963

·"STATEMENT BY M. L. KING, JR., F. L. SHUTTLESWORTH, RALPH D. ABERNATHY, et al. FOR ENGAGING IN PEACEFUL DESEGREGATION DEMONSTRATIONS

"In our struggle for freedom we have anchored our faith and hope in the rightness of the Constitution and the moral laws of the universe.

"Again and again the Federal judiciary has made it clear that the priviledges (sic) guaranteed under the First and the Fourteenth Amendments are to (sic) sacred to be trampled upon by the machinery of state government and police power. In the past we have abided by Federal injunctions out of respect for the forthright and consistent leadership that the Federal judiciary has given in establishing the principle of integration as the law of the land.

"However we are now confronted with recalcitrant forces in the Deep South that will use the courts to perpetuate the unjust and illegal system of racial separation.

"Alabama has made clear its determination to defy the law of the land. Most of its public officials, its legislative body and many of its law enforcement agents have openly defied the desegregation decision of the Supreme Court. We would feel morally and legal responsible to obey the injunction if the courts of Alabama applied equal justice to all of its citizens. This would be

"MORE                MORE
                     MHH
              –2–

sameness made legal. However the ussuance (sic) of this injunction is a blatant of difference made legal.

"Southern law enforcement agencies have demonstrated now and again that they will utilize the force of law to misuse the judicial process.

"This is raw tyranny under the guise of maintaining law and order. We cannot in all good conscience obey such an injunction which is an unjust, undemocratic and unconstitutional misuse of the legal process.

"We do this not out of any desrespect (sic) for the law but out of the highest respect for the law. This is not an attempt to evade or defy the law or engage in chaotic anarchy. Just as in all good conscience we cannot obey unjust laws, neither can we respect the unjust use of the courts.

"We believe in a system of law based on justice and morality. Out of our great love for the Constitution of the U. S. and our desire to purify the judicial system of the state of Alabama, we risk this critical move with an awareness of the possible consequences involved.

"FOR FURTHER INFORMATION
       Phone 324–5944
       Wyatt tee walker
       Public Information
       Officer"

" * * * Shuttlesworth read from a typed statement more or less re-affirming what was said in the statement that was read by Rev. King." Shuttlesworth made the statement:

" 'That they had respect for the Federal Courts, or Federal Injunctions, but in the past the State Courts had favored local law enforcement, and if the police couldn't handle it, the mob would.' "

" * * * Rev. Martin Luther, in response to a question, said, 'We will continue today, tomorrow, Saturday, Sunday, Monday, and on.' * * *"

Lieutenant House testified:

"Q All right. Now, a moment ago, you made the statement all three of them said that they were going to proceed regardless of the injunction, or words to that affect. I don't recall the exact words you used.

"A I don't recall whether they said regardless of the injunction, but all three of them in their statement says, 'This statement that Rev. Martin Luther King read was a joint statement of the three,' and so stated on the top of his statement, and all three of them mentioned knowledge of the injunction, and said they were going to continue on. I believe Rev. Martin Luther King stated that the—just before stating, 'We will continue on today, tomorrow, and Saturday, Sunday, and Monday, and on', just before that remark, he stated that, 'The attorneys would attempt to dissolve the injunction, but we will continue on today, tomorrow, Saturday, Sunday, Monday, and on'.

" * * * * * *
"Q What sort of reaction did you hear from those present, including the Rev. A. D. King?

"A He said on three or four occasions, or two I remember specifically, when he remarked, 'Dam the torpedoes', there was a loud applause by everyone in the background, and also the group that was gathered close by there, and also to 'Give me liberty or give me death', there was a lot of noise and applaud to that. There was applauding on several occasions. I don't recall the exact terms."

J. Walter Johnson, Jr., reporter for Associated Press, testified:

"Q Were you present when the injunction was served?

"A Yes, I was.

"Q You were present, and that was in the middle of the night, you say?

"A Yes.

"Q Was this remark made then at that time?

"A That direct quote, they were marching at the—just a minute, and I will be happy to find it. He said this direct—this is what Shuttlesworth said, speaking of the injunction handed to him: 'This is a flagrant denial of our constitutional privileges.'

"Q All right.

"A 'In no way will this retard the thrust of this movement.' He said they would have to study the details. He said, 'An Alabama injunction is used to

misuse certain constitutional privileges that will never be trampled on by an injunction. That is what they were saying that particular night right after the injunction.

"Q All right, who was present there at that time?

"A Ralph Abernathy was there, Martin Luther King, Mr. Shuttlesworth, Wyatt Tee Walker, and there was some others I did not recognize, did not know them.

"Q Some you did not know?

"A Some I did not know. Abernathy made a statement at that time also. He said, 'An injunction nor anything else will stop the Negro from obtaining citizenship in his march for freedom.'"

Elvin Stanton, news director for WSGN Radio, testified that he was present at a meeting on April 11th, and that:

"A The Rev. King said, 'Injunction or no injunction we are going to march tomorrow.' That is a direct quote."

Petitioners did not obtain a permit to march or parade. A march or parade occurred on Friday, April 12, and another march occurred on the streets of Birmingham on Sunday, April 14, 1963.

Willie B. Painter, investigator with Alabama Department of Public Safety, testified that he observed the Friday march, that several of petitioners entered a church, that within several minutes a group came out of the church and began a parade or march in the direction of downtown Birmingham, that:

"A This group was led by Rev. Martin Luther King, Jr., Rev. Ralph Abernathy, Rev. Shuttlesworth, as I recall, Rev. Bernard Lee was also in the formation leading the group. There were several people following in this formation. As the group marched away from the church in the direction of down-

town Birmingham a group of persons who had assembled along the sidewalk and the street followed this procession. This group of people would consist of several hundred.

"Q Now, do you mean the marchers or the other group?

"A The group following the marchers. Actually the whole procession was going almost as a group. As the group came out of the church then the whole group of people who had assembled along the sidewalk followed along behind them and I think you could describe it as one procession."

The witness, Painter, further testified that he was present at a church from 2:30 or 3:00 o'clock in the afternoon of Sunday, April 14, 1963; that he observed the petitioner, Walker, talking to a group "and forming a group of people two or three abreast"; that a group came out of the church and began walking rapidly along the sidewalk; that "this large crowd of people that had gathered outside the church began moving along with them"; that there were several hundred people within this group; that an object struck the windshield of one of the city motors and broke the windshield; that the witness saw a negro man throw a brick which "passed within a close range of one of the police officers there in the street on duty."

James Ware, newspaper photographer, testified that a rock, "About the size of a large grapefruit" hit him on the back of the head and caused a knot which was still sore; that a lot of people were "hollering, apparently at the policemen making the arrests"; that the witness saw only two rocks but heard several more falling around him; that he was concentrating on taking pictures of what was happening; that he identified A. D. King and Wyatt Tee Walker in the picture.

The witness Ware identified four pictures, which were introduced into evidence and are before us. Ware identified the

pictures as being pictures which he took of the paraders on Sunday afternoon. The pictures show people walking in and entirely occupying a street from curb to curb on each side and on the sidewalks.

On Monday, April 15, 1963, the City of Birmingham filed petition alleging that respondents had violated the injunction and praying that rule nisi issue to respondents requiring them to show cause why they should not be adjudged and punished for contempt. Rule nisi did issue, hearing was had, and those respondents who have applied for certiorari were adjudged guilty of contempt of the circuit court and committed to the sheriff for five days and fined Fifty dollars each. We review this judgment by certiorari.

On the same Monday, April 15, 1963, respondents filed a motion to dissolve the temporary injunction which had been issued on April 10, 1963.

During the hearing on the charge that petitioners had violated the injunction, the trial court stated the issues presented by the evidence as follows:

"THE COURT: The only charge has been this particular parade, the one on Easter Sunday and the one on Good Friday, and on the question of the meeting at which time some press release was issued. Am I correct in that?

"MR. MC BEE: Essentially that is correct.

"THE COURT: I don't know of any other evidence or any other occasions other than those, and I see no need of putting on testimony to rebutt something where there has been no proof along that line."

Petitioners do not appear to deny the charge that they, or a number of them, did parade or march without a permit contrary to the order temporarily enjoining them " * * * from engaging, sponsoring, inciting or encouraging mass street parades or mass processions or like demonstrations within a permit * * *."

Petitioners, on page 3 of brief, filed in this court July 19, 1963, admit that "After issuance of the injunctive order, petitioners and others continued their participation in these protest demonstrations and accordingly were held in contempt of the injunctive decree." On page 3 of brief petitioners say:

"The circumstances out of which this action arose are well known to the court. During April and May 1963, petitioners and other participated in protest demonstrations in Birmingham, Alabama in the form of picketing, 'sit-ins', and marches on the streets of the City of Birmingham, designed to evidence dissatisfaction with continuing racial segregation in that city and to persuade city officials and others to put an end to segregation. About one week after these demonstrations began, the City of Birmingham secured an injunction from the Circuit Court for the Tenth Judicial Circuit designed to thwart their continuation. After issuance of the injunctive order, petitioners and others continued their participation in these protest demonstrations and accordingly were held in contempt of the injunctive decree. Petitioners argued at the contempt hearing that the injunctive decree, designed as it was to prevent the exercise of their right to protest, was an invalid order. Petitioners reiterated this argument in the petition for certiorari filed herein, in the brief filed in support of the petition, and on oral argument before this Court on May 15, 1963

"Little, therefore, remains to be added to what has already been urged in this Court. The issuance of the injunctive order, seen against the backdrop of the exercise by petitioners of well-established constitutional rights was beyond the jurisdiction of the court and hence void. * * *"

In the light of petitioners' statement in brief, it would be difficult to decide that petitioners did not violate the temporary injunction against engaging in mass street parades without a permit. Petitioners did engage in and incite others to engage in mass street parades and neither petitioners nor anyone else had obtained a permit to parade on the streets of Birmingham.

Petitioners argue that the injunctive order is void and, for that reason, the judgment of contempt is void.

■ The circuit court, in equity, is a court of general equity jurisdiction and has power to issue injunctions. Section 144 of Constitution of 1901 recites:

"Sec. 144. A circuit court, or a court having the jurisdiction of the circuit court, shall be held in each county in the state at least twice in every year, and judges of the several courts mentioned in this section may hold court for each other when they deem it expedient, and shall do so when directed by law. The judges of the several courts mentioned in this section shall have power to issue writs of injunction, returnable to the courts of chancery, or courts having the jurisdiction of courts of chancery."

§§ 1038 and 1039, Title 7, Code 1940, recite:

"§ 1038. Injunctions may be granted, returnable into any of the circuit courts in this state, by the judges of the supreme court, court of appeals, and circuit courts, and judges of courts of like jurisdiction."

"§ 1039. Registers in circuit court may issue an injunction, when it has been granted by any of the judges of the appellate or circuit courts when authorized to grant injunctions, upon the fiat or direction of the judge granting the same indorsed upon the bill of complaint and signed by such judge."

Petitioners do not argue that there was any failure to observe procedural requirements in the issuance of the injunction. We discuss later the question of lack of service on some petitioners.

Petitioners rest their case on the proposition that Section 1159 of the General City Code of Birmingham, which regulates street parades, is void because it violates the First and Fourteenth Amendments of the Constitution of the United States, and, therefore, the temporary injunction is void as a prior restraint on the constitutionally protected rights of freedom of speech and assembly.

It is to be remembered that petitioners are charged with violating a temporary injunction. We are not reviewing a denial of a motion to dissolve or discharge a temporary injunction. Petitioners did not file any motion to vacate the temporary injunction until after the Friday and Sunday parades. Instead, petitioners deliberately defied the order of the court and did engage in and incite others to engage in mass street parades without a permit.

The Supreme Court of the United States has said:

"* * * This Court has used unequivocal language in condemning such conduct, and has in United States v. Shipp, 1906, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, provided protection for judicial authority in situations of this kind. In that case this Court had allowed an appeal from a denial of a writ of *habeas corpus* by the Circuit Court of Tennessee. The petition had been filed by Johnson, then confined under a sentence of death imposed by a state court. Pending the appeal, this Court issued an order staying all proceedings against Johnson. However, the prisoner was taken from jail and lynched. Shipp, the sheriff having custody of Johnson, was charged with conspiring with others for the purpose of lynching Johnson, with intent to show contempt for the order of this Court. Shipp .

denied the jurisdiction of this Court to punish for contempt on the ground that the stay order was issued pending an appeal over which this Court had no jurisdiction because the constitutional questions alleged were frivolous and only a pretense. The Court, through Mr. Justice Holmes, rejected the contention as to want of jurisdiction, and in ordering the contempt to be tried, stated:

" 'We regard this argument as unsound. It has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt. In re Sawyer, 124 U. S. 200, 8 S.Ct. 482, 31 L.Ed. 402; Ex parte Fisk, 113 U.S. 713, 5 S. Ct. 724, 28 L.Ed. 1117; Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861. But even if the Circuit Court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument, and to take the time required for such consideration as it might need. See Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 387, 4 S.Ct. 510, [514] 28 L.Ed. 462, 465. Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. Rev.Stat. § 766, act of March 3, 1893, c. 226, 27 Stat. 751 * * *. The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either

way, and therefore must provide for it.' 203 U.S. 573, 27 S.Ct. 166, 51 L. Ed. 319.

"If this Court did not have jurisdiction to hear the appeal in the Shipp case, its order would have had to be vacated. But it was ruled that only the Court itself could determine that question of law. Until it was found that the Court had no jurisdiction, ' * * it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition * * *.'

"Application of the rule laid down in United States v. Shipp, supra, is apparent in Carter v. United States, 5 Cir. 1943, 135 F.2d 858. There a district court, after making the findings required by the Norris-LaGuardia Act, issued a temporary restraining order. An injunction followed after a hearing in which the court affirmatively decided that it had jurisdiction and overruled the defendants' objections based upon the absence of diversity and the absence of a case arising under a statute of the United States. These objections of the defendants prevailed on appeal, and the injunction was set aside. Brown v. Coumanis, 5 Cir. 1943, 135 F.2d 163, 146 A.L.R. 1241. But in Carter, a companion case, violations of the temporary restraining order were held punishable as criminal contempt. Pending a decision on a doubtful question of jurisdiction, the District Court was held to have power to maintain the *status quo* and punish violations as contempt.

"In the case before us, the District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief. The defendants, in making their private determination of the law acted at their peril. Their disobedience is punishable as criminal contempt.

"Although a different result would follow were the question of jurisdiction frivolous and not substantial, such contention would be idle here. The applicability of the Norris-LaGuardia Act to the United States in a case such as this had not previously received judicial consideration, and both the language of the Act and its legislative history indicated the substantial nature of the problem with which the District Court was faced.

"Proceeding further, we find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued. In Howat v. [State of] Kansas, 1922, 258 U.S. 181, 189, 190, 42 S.Ct. 277, 280, 281, 66 L.Ed. 550, this Court said:

"'An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.'

"Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, Worden v. Searls, 1887, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853, or though the basic action has become moot, Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

"We insist upon the same duty of obedience where, as here, the subject matter of the suit, as well as the parties, was properly before the court; where the elements of federal jurisdiction were clearly shown; and where the authority of the court of first instance to issue an order ancillary to the main suit depended upon a statute, the scope and applicability of which were subject to substantial doubt. The District Court on November 29 affirmatively decided that the Norris-LaGuardia Act was of no force in this case and that injunctive relief was therefore authorized. Orders outstanding or issued after that date were to be obeyed until they expired or were set aside by appropriate proceedings, appellate or otherwise. Convictions for criminal contempt intervening before that time may stand.

"* * *

"Assuming, then, that the Norris-LaGuardia Act applied to this case and prohibited injunctive relief at the request of the United States, we would set aside the preliminary injunction of December 4 and the judgment for civil contempt; but we would, subject to any infirmities in the contempt proceedings or in the fines imposed, affirm the judgments for criminal contempt as validly punishing violations of an order then outstanding and unreversed." United States v. United Mine Workers of America, 330 U.S. 258, 290–295, 67 S.Ct. 677, 694–697, 91 L.Ed. 884.

No useful purpose would be served by further discussion of this point. See concurring opinion of Harlan, J., in In Re Green, 369 U.S. 689, 693, 82 S.Ct. 1114, 8 L.Ed.2d 198.

■ We hold that the circuit court had the duty and authority, in the first instance,

to determine the validity of the ordinance, and, until the decision of the circuit court is reversed for error by orderly review, either by the circuit court or a higher court, the orders of the circuit court based on its decision are to be respected and disobedience of them is contempt of its lawful authority, to be punished. Howat v. State of Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L. Ed. 550.

■ Petitioners Martin Luther King, Jr., Ralph Abernathy, A. D. King, Wyatt Tee Walker, and F. L. Shuttlesworth, are named in the injunction and were served with a copy on April 11, 1963. That they were active in inciting others to parade and actively participated in the parades or marches after they were served with a copy of the injunction is clearly shown by the testimony. Petitioners do not seem to argue in brief to the contrary. As to those five of the petitioners last named the judgment is due to be and is affirmed.

Petitioner Porter was served with a copy of the injunction on April 12, 1963, at 4:13 p. m. There is testimony that with respect to his participation in the parade on Sunday, April 14, 1963, "Rev. Porter stated that he was one of the leaders." There is other testimony that he engaged in the Sunday parade. The judgment against him is affirmed.

■ The general rule is that one who violates an injunction is guilty of contempt, although he is not a party to the injunction suit, if he has notice or knowledge of the injunction order, and is within the class of persons whose conduct is intended to be restrained, or acts in concert with such a person. See 15 A.L.R. 387, and authorities there cited.

The instant injunction enjoins the named respondents "and all other persons in active concert or participation with the respondents to this action." As to the petitioners who were not named as parties in the bill, or were not served with a copy of the injunction, we come now to consider the evidence going to show their knowledge of the terms of the injunction with respect to parades and the conduct of such petitioners in participating in the parades or marches.

Petitioners Hayes, Smith, and Fisher were not served with a copy of the injunction until after the Sunday march. Each of them participated in the Sunday parade and there is evidence that each of them had knowledge of the injunction prior to that parade. Fisher testified that he attended the Friday and Saturday meetings. He also testified:

"Q What did you hear about the injunction? What did they tell you about it?

"A I only heard about the injunction. It wasn't interpreted to me.

"Q Was it interpreted to you you would probably have to go to jail if you took part in that march or walk?

"A Yes, but I didn't see any reason I would have to go.

"Q I understand, but you were not told if you got in that march you would have to go to jail?

"A I was told if I walked on the streets of Birmingham I would have to go to jail.

"Q I am talking about this Easter Sunday procession. That is what they were talking about?

"A That's right."

The witness Jones, City Detective, referring to Hayes, testified that:

"A He stated he was with the leaders on the march. I asked him about the injunction. He knew of it, he said. I asked him was he just marching in the face of it anyway, and he said, 'Yes, he was doing it for human dignity.'"

Jones also testified that petitioner Smith stated that he "had knowledge of the in-

**64**

junction" prior to his participation in the Sunday parade.

■ We think it would require of the trial court an unduly naive credulity to declare that the court erred in concluding that Hayes and Fisher had knowledge that marching on the streets was enjoined and that they knowingly and deliberately violated the injunction by marching or parading on Sunday. As to Hayes and Fisher the judgment against them is affirmed.

■■ As to petitioner Smith we reach a different result. Smith was not a party to the suit and was not served with a copy of the injunction prior to the Sunday March. He was bound, alike with other members of the public, to observe its restrictions when known, to the extent that he must not aid or abet its violation by others, and the power of the court to proceed against one so offending and punish for the contemptuous conduct is inherent and indisputable. Garrigan v. United States, 7 Cir., 163 F. 16, 89 C.C.A. 494, 23 L.R.A.,N.S., 1295. But,. in order to convict a person of contempt where he is not a party and has not been served with a copy of the order, it must be shown clearly that he had knowledge of the order for the injunction in such a way that it can be held that he understood it, and with that knowledge committed a wilful violation of the order. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 8 Cir., 124 F. 736.

■ There is evidence that Smith "had knowledge" of the injunction and he testified that he had heard about the injunction on the radio, "Maybe Saturday," before the Sunday March. It may well be that Smith was fully advised of the terms of the injunction, but we think a finding to that effect must rest on speculation rather than on a reasonable inference from the testimony. The injunction restrains acts other than parading. Knowledge of other enjoined acts would not be knowledge of the injunction against parading. We hold that it is not clearly shown that Smith had knowledge of the injunction in such a way

that it can be held that he understood it and with that knowledge committed a wilful violation of the injunction. The judgment of contempt against Smith is quashed.

■ We have not found in the record where petitioners Young and Bevel were served with a copy of the injunction. We have not found evidence to show that either of them participated in the march on either Friday or Sunday. We are not persuaded that the evidence sustains the judgment of contempt against them, and as to Young and Bevel the judgment holding them in contempt is quashed.

Affirmed in part.

Quashed in part.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.