Metropolitan Life Insurance Company ("Met Life") petitions for a writ of mandamus directing Mobile County Circuit Judge Douglas I. Johnstone: (1) to refrain from exercising jurisdiction over any discovery matters in a certain action pending in the Mobile Circuit Court, Susette E. Williams, etal. v. Metropolitan Life Ins. Co., et al., CV-96-3247 ("Williams "); and (2) to vacate the discovery order entered by Judge Johnstone on July 16, 1997, in Williams. This mandamus petition relates to ostensibly conflicting discovery orders relating to Williams. Judge Ferrill D. McRae, also of the Mobile County Circuit Court, had previously entered an order purporting to consolidate Williams with all other cases against Met Life brought by the law firm of Richard F. Pate 
Associates ("the Pate firm"). The cases were consolidated for discovery purposes only.
When Susette Williams filed her case in the Mobile Circuit Court, the Pate firm had approximately 13 other cases against Met Life pending in the Mobile Circuit Court, assigned to 4 different judges. Judge McRae presided over the initial case filed by the Pate firm, which was styled Walter H. Rice III v.Metropolitan Life Ins. Co., et al., CV-96-1371 ("Rice").[1]Williams was assigned to Judge Johnstone. Pursuant to Rule 42(a), Ala.R.Civ.P., Met Life moved to consolidate all of the cases against it that had been filed by the Pate firm. Met Life later filed an amended motion for consolidation, particularly mentioning Williams. The Williams plaintiffs later amended their complaint to include class action allegations.
While the motion to consolidate was pending, Met Life removed the Williams case to a federal district court. Then, on January 10, 1997, Judge McRae issued an order ("the January 10 order") consolidating all of the cases for discovery and other pretrial purposes. Williams was among the cases consolidated.[2] The order further provided that when a party submitted a motion or other filing relating to one of the cases mentioned, "the document [was to] bear the instruction 'TO BE DECIDED BY JUDGE MCRAE' in boldface and all-capital type."[3]
The federal court remanded Williams to the Mobile Circuit Court on February 5, 1997. On February 12, 1997, Judge Johnstone conditionally certified the Williams case as a class action. Met Life objected to Judge Johnstone's exercise of jurisdiction over that issue, asserting that class determinations are a pretrial matter and that the class action question was subject to the January 10 order of Judge McRae that consolidated all of the Met Life cases before him. Judge Johnstone rejected that argument, stating that Judge McRae had "inadvertently" included Williams among the consolidated cases.
Met Life subsequently requested a special hearing in front of Judge McRae in order to clarify the scope of his jurisdiction over discovery matters. Judge McRae set the hearing for July 10, 1997. On July 11, 1997, Judge McRae again issued a clarifying order, stating, "[T]his Court has jurisdiction over all discovery in these Met Life cases, and all discovery issues shall be submitted to this Court for resolution. . . ."
About the same time, the plaintiffs in Williams sought a hearing by Judge Johnstone, requesting a clarification as to who had jurisdiction over Williams. In addition, they asked Judge Johnstone for an order compelling discovery. In open court, on July 11, Judge Johnstone stated:
 "I would have three observations. Number one, the case before me doesn't seem to have been consolidated. Susette Williams's case doesn't seem to have been consolidated with any cases before Judge *Page 231 
McRae, notwithstanding that his order lists it and his order was a nullity in January listing Susette Williams inasmuch as [Williams] was not pending in this Court at that time. This Court had no jurisdiction to do anything with the said Susette Williams case. So I don't think the consolidation order included the Susette Williams case that's pending before me. That's the first observation. The second observation is that the consolidation order is just a sort of partial consolidation order, merely consolidates the cases for discovery and pretrial purposes. It doesn't move the case to Judge McRae's docket in all respects, if any. The third observation is that this order didn't just issue a few, an hour or so ago, does not in anywise contradict anything I'm about to do. Judge McRae speaks for the Circuit Court for Mobile County, specifically the Circuit Court for the Thirteenth Judicial Circuit of Alabama, just as I do. It's not as though Judge McRae is presiding over one Court and I'm presiding over another Court. We're both presiding over exactly the same Court and he's just saying that this Court has jurisdiction over these discovery matters. He doesn't differentiate between judges . . . at all in this order."
On July 16, 1997, Judge Johnstone issued a discovery order purporting to relate to the Williams case. Because of the apparent conflict between Judge McRae's orders and Judge Johnstone's orders, Met Life petitions this Court for a writ of mandamus in order to resolve the conflict.
Met Life argues that by allowing Judge Johnstone to issue discovery orders involving the Williams case, conflict has arisen, and will continue to arise, with respect to discovery orders issued in the other Met Life cases. Met Life also argues that the plaintiffs' counsel in Williams improperly attempted to avoid Judge McRae's order, asserting that counsel should have petitioned this Court for mandamus relief to have Judge McRae's order set aside. Instead, Met Life asserts, theWilliams plaintiffs simply ignored Judge McRae's order and failed to use the proper means for seeking relief from that order.
The plaintiffs, on the other hand, argue that because the federal court had jurisdiction over Williams when the January 10 order was entered, Judge McRae lacked jurisdiction over that case and therefore had no authority to include Williams in that order. The plaintiffs assert that upon remand to the circuit court Williams merely resumed its position as if it had not been removed to the federal court. The plaintiffs also point out that six days after the federal court remanded Williams, Judge Johnstone stated that he "specifically retained" jurisdiction over that case, which had been initially assigned to his docket. Essentially, the plaintiffs argue that any orders issued by the Mobile Circuit Court referring to a case pending in the federal court are void and have no effect unless or until the case is remanded to the state court. Thus, the plaintiffs assert that Judge Johnstone's order, dated February 12, 1997, reestablished jurisdiction over Williams and, thus, that Judge Johnstone had the authority to issue the July 16 discovery order, regardless of the apparent conflict with Judge McRae's orders.
Alabama courts have long recognized "that an order issued by a court with jurisdiction over the subject matter [and the person] must be obeyed by the parties subject to the order until it is reversed by orderly and proper proceedings." Exparte Purvis, 382 So.2d 512, 514 (Ala. 1980); see Walker v. Cityof Birmingham, 279 Ala. 53, 181 So.2d 493 (1966), affirmed,388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); and UnitedStates v. United Mine Workers of America, 330 U.S. 258,67 S.Ct. 677, 91 L.Ed. 884 (1947). Met Life correctly asserts that parties subject to a court order "are expected to obey [it] until it is modified or reversed, even if they have proper grounds to object to [it.]" Celotex Corp. v. Edwards,514 U.S. 300, 306, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). InHowat v. Kansas, 258 U.S. 181, 190, 42 S.Ct. 277, 281,66 L.Ed. 550 (1922), the United States Supreme Court stated:
 "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself *Page 232 
or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."
See Celotex Corp., 514 U.S. at 313, 115 S.Ct. at 1501; PasadenaCity Board of Education v. Spangler, 427 U.S. 424,96 S.Ct. 2697, 49 L.Ed.2d 599 (1976) (disobedience of outstanding injunctive order subjects the violator to contempt even though the order may later be reversed, vacated, or amended); UnitedMine Workers, 330 U.S. 258, 67 S.Ct. 677; Walker v. City ofBirmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210
(parties, generally, may not violate an injunction or temporary restraining order and then attempt to challenge the constitutionality of the order in contempt proceedings, unless the injunction or TRO is transparently invalid); Ex partePurvis, supra, 382 So.2d at 514-15. In re Providence JournalCo., 820 F.2d 1342, 1346 (1st Cir. 1986), cert. dismissed,485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988).
"Court orders are accorded a special status in American jurisprudence." In re Providence Journal Co., supra, 820 F.2d at 1347. However, because a court "may exercise only those powers entrusted to it by law," orders entered by a court without jurisdiction are not afforded this "special status."Id. In King v. Landrum, 370 So.2d 945, 947 (Ala. 1979), this Court adopted this language of the Minnesota Supreme Court:
 "It is well settled that jurisdiction once acquired by a state court is continuous though the case has been removed to the United States District Court and later remanded to the state court. The basic correctness of this rule becomes at once apparent if it is borne in mind that the order removing an action to a Federal court does not terminate the state court's jurisdiction but merely stays or interrupts proceedings in that court pending a disposal of the action by the Federal court."
Doerr v. Warner, 247 Minn. 98, 106, 76 N.W.2d 505, 512 (1956). (Emphasis omitted.) This Court went on to state in King that while a federal court considers a removal petition, a state court's jurisdiction is "stayed" and that it "immediately quicken[s]" upon remand. Id.
In King, the trial court entered a summary judgment for two named defendants and made the judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The plaintiff appealed from that judgment five days after the remaining defendants had removed the case to a federal court. Upon remand, the plaintiff did not renew her notice of appeal against the two prevailing defendants. The prevailing defendants claimed that the 42-day time limit for appeal had lapsed and that the previous notice of appeal was null and void. This Court disagreed; it held ("[a]ssuming, without deciding, that the Federal Court did obtain jurisdiction over all parties to the cause") that the notice of appeal, filed after removal to the federal court and pursuant to a final judgment, was not void, but, rather, that the notice "was merely stayed" and that it was "quickened again" upon remand from the federal court, so that the plaintiff did not need to renew her notice of appeal. 370 So.2d at 947. That is, actions taken in a state court immediately become effective again upon remand and have the same effect as if no removal had taken place.
King, we note, implicitly overruled an earlier line of cases holding that the proper removal of an action from a state court to a federal court immediately divests the state court of jurisdiction and makes any subsequent action by the state courtcoram non judice. See Ex parte City Bank Trust Co., 200 Ala. 440,76 So. 372 (1917); Stix v. Keith, 90 Ala. 121, 7 So. 423
(1890); Great Atlantic Pacific Tea Co. v. Miller, 229 Ala. 313,156 So. 834 (1934). However, we see no reason to question the authority of King. Therefore, we conclude that Judge McRae had jurisdiction to enter the order and that his order, as it relates to the Williams case, quickened upon the remand of that case from the federal court.
Rule 42(a), Ala.R.Civ.P., grants the "trial court" the authority to consolidate actions involving common questions of law or fact. In addition, the trial court also may make such orders as may tend to avoid unnecessary costs or delay involved in litigation. See Rule 42(a). The purpose of the Rules of Civil Procedure is to promote the efficient functioning of judicial administration and to *Page 233 
secure the "just, speedy and inexpensive" resolution of disputes. See Rule 1. Clearly, the Rules contemplate granting a "trial court" the authority to make orders necessary to consolidate actions for discovery purposes. However, we do not think the conflict involved in this case was contemplated when this Court adopted Rule 42(a). While Rule 42(a) grants the "trial court" the authority to consolidate actions for discovery purposes, nothing in the Rules deals with the question which judge may make such an order when two or more judges in the same circuit have cases that are subject to a consolidation motion. Counsel for both sides indicate that, as a general rule, local custom in the Mobile Circuit would have the consolidation decisions in such a situation made by the judge with the earliest-filed case. However, Rule 83, Ala.R.Civ.P., abolished all local rules. As the plaintiffs' counsel correctly points out, there exists no rule stating that when one judge issues a consolidation order relating to a case that is assigned to another judge of the same circuit, the other judge cannot specifically retain jurisdiction over the case assigned to his docket.
This Court may issue a writ of mandamus only when the petitioner "has shown a clear legal right to the order sought; an imperative duty on the respondent to perform, accompanied by a refusal to do so; the lack of another adequate remedy; and properly invoked jurisdiction." Ex parte Holland,692 So.2d 811, 814 (Ala. 1997); see Rule 21, Ala.R.App.P.; Ex parte Stateex rel. McKinney, 575 So.2d 1024, 1026 (Ala. 1990). This Court will not issue a writ of mandamus unless, from a review of the record, it determines that the trial court acted in an arbitrary and capricious manner, thereby abusing its discretion. Ex parte State ex rel. McKinney, supra; Ex parteThompson, 474 So.2d 1091 (Ala. 1985). Mandamus is a drastic and extraordinary remedy, not a writ of right. Ex parte Adams,669 So.2d 128, 132 (Ala. 1995); Ex parte State ex rel. McKinney,supra; Ex parte Baker, 459 So.2d 873 (Ala. 1984).
Essentially, Met Life asks this Court to enter an order resolving a conflict between two judges sitting in the same judicial circuit (the 13th Judicial Circuit of Alabama). Section 12-17-24, Ala. Code 1975, grants presiding circuit judges general supervisory authority over their respective judicial circuits: "The presiding circuit judge shall exercise
a general supervision of the judges . . . and see that they attend strictly to the prompt, diligent discharge of their duties." (Emphasis added.) The Rules of Civil Procedure do not contemplate the resolution of conflicts between two trial judges who may issue competing orders while sitting in the same judicial circuit. Logically, we think, the resolution of such disputes should be made, initially, by the presiding circuit judge, under that judge's general supervisory authority. We conclude that the presiding judge of the 13th Judicial Circuit is in the best position to resolve this dispute and that he should do so.[4]
The petition is denied.
PETITION DENIED. *Page 234 
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, and SEE, JJ., concur.
BUTTS, J., concurs in the result.
[1] Currently, in addition to Williams, there are 36 other cases against Met Life filed by the Pate firm that are pending in the Mobile Circuit Court and consolidated for discovery purposes with the Rice case.
[2] Judge McRae later clarified the January 10 order so that as toWilliams it applied only to matters of discovery, not to substantive matters.
[3] Met Life asserted, in its brief filed with the mandamus petition, that the Williams plaintiffs had failed to adhere to this order in regard to later motions and other filings.
[4] We understand that a presiding circuit judge's authority is not unlimited. In Resolute Insurance Co. v. Ervin, 285 Ala. 575, 234 So.2d 867 (1970), this Court held that a presiding judge may not exercise supervisory authority so as to usurp the ministerial functions of the circuit clerk. In so holding, this Court stated:
 "This section [§ 172, Title 13, Code of Alabama 1940, the predecessor to § 12-17-24] is not to be construed to mean that a presiding judge can direct and usurp the functions and duties of the named officials. His supervision is limited by the statute to see only that such officials promptly and diligently discharge their duties."
285 Ala. at 579, 234 So.2d at 870. Our decision today should not be construed as authorizing a presiding circuit judge to unjustly intrude upon the office or functions of other circuit judges in the same judicial circuit. In Resolute Insurance Co.v. Ervin, the respondent circuit judges, acting without authority, had interfered with the circuit clerk's duty to approve appeal bonds. The present situation is different. Here, § 12-17-24 expressly authorizes a presiding judge to see that officials promptly and diligently discharge their duties. It is, therefore, within the authority of the presiding judge of the 13th Judicial Circuit to intervene in this dispute between Judge Johnstone and Judge McRae, so as to ensure the "just, speedy and inexpensive determination" of the cases before them. Rule 1(c), Ala.R.Civ.P. See, also, In re Ingram, 356 So.2d 618
(Ala. 1978).