Mr Chief Justice Marshall
 

 delivered the opinion of the . Court.
 

 This is an appeal from a decree pronounced by the court of the United States, :for the district of Missouri, by which the claim-and title of the petitioner, Charles Dehault De-lassus, to a tract of land in his petition mentioned, under a concession alleged to be authorized by the laws of Spain, and protected by the treaties ceding Louisiana to the United States, was declared to be invalid.
 

 The suit was instituted under the act of the 25th of May 1824, “ enabling the claimants to lands within the limits' of the state of Missouri, .and territory of Arkansas, to institute proceedings to try the validity of their claims.”
 

 
 *131
 
 The petition, which is the institution of the suit, states' that on the 3d of March 1795, Don Pedro Dehault. Delassus De Luzieres; the father of the petitioner, addressed his petition to Don, Zehon Trudeau, lieutenant-governor of the province of upper Louisiana, praying that a concession or grant should be made to him and .his heirs, of a tract of land containing seven thousand and fifty-six arpents, French measure, being, a league ■ square. That said lieutenant'governor in compliance with, said petition, and in obedience to an official instruction addressed to him by the governor-general of the province of Louisiana, thé baron Carondelet, did, by decree bearing date the 1st of April in the year 1795, grant to said De Luzieres and his heirs for ever, a tract of a square leaguepsituated on a branch of the river St Francis called Gabour'y, ¿rfd .by said decree' ordered Francois Valle, the captain commandant of the port of St Genevieve, to put Dé Luzieres forthwith in possession of the said tract of land,, which was done on the 15th of the same month.. A delay in the appointment of a surveyor for the province, prevented. the survey from beirigimmediately. made. It was made on the 14th of December 173,9. 'The¡ petitioner proceeds to state that tire requisites of the laws for the preservation of his right had been observed, that his father is dead, and the title' is vested in the petitioner., He prays that his title and claim, be confirmed.
 

 The answerof the district attorney professes ignorance of the facts.; and insists that the petitioner be required lo prove the validity of his claim.
 

 The petition of Pierre Charles Dehault Delassus De Luzieres presented to Don Zenon Trudeau, lieutenant governor of the western part of Illinois, &c., states that in May 1793, he resolved to come to Illinois on the assurance of his lordship, the baron De Carondelet, governor-general of Louisiana, that he would order and authorize him, the. said‘Don Zen.on Trudeau, the lieutenant governor, &c., to grant him, the petitioner, a tract of land for the exclusive exploration.of lead mines, &c.,\ which assurance is fully expressed in a letter annexed to the petition, which, he adds, conforms 'to a letter addressed to the lieutenant governor on the same subject. The pelitibn then ascribes the delay-.in its presentation to long and severe illness, and to the difficulty, of finding a tract of land adapted to the
 
 *132
 
 óbjéct. ' This being at length accomplished, and having founu a spot indicating that it contains lead mineral on one of the branches of the river St Francois called Gabouvy; the petitioner prays a concession thereof to the extent of a league square.
 

 The letter of the baron De Carondelet is in these words :
 

 “
 
 To Zenon Trudeau.
 

 “ The knight Don Pierre Dehault Delassus has entered into contract with this intendancy to deliver yearly during the term of five years, thirty thousand pounds of lead, in balls or bars.
 

 In order that he. may comply with his contract, your worship will put him in possession of the land he may solicit, fo.r the exploration, benefit and enjoyment of the mines ; for which purpose he is to present a memorial directed to me, and which your worship will transmit, that I may give him the corresponding decree .of concession; being understood in (he mean time your worship will put him in possession. God preserve your worship many years.
 

 “ El Baron de Carondelet.
 

 “ New Orleans, May 7th 1793.”
 

 Other letters from the baron De Carondelet, sustaining that .above recited, were annexed to this petition ; and’on the 1st of April 1795, Zenon Trudeau, the lieutenant governor of the province, granted the required concession.
 

 The'regular documents to prove the survey, and the possession of the premises by Delassus, were also laid before the district court.
 

 The act of the 2b‘th of May 1824, gives the district court authority to hear and determine all questions arising in any cause brought before it by the petition of any person claiming lands within, the state of Missouri, “by virtue of any French, or Spanish grant,.concession, warrant, or order of survey legally made, granted, or issued, before the 10th day of March 1804, by the proper authorities, to any person or persons resident in the province of Louisiana at the date thereof, or on or before the tenth day of March 1804, and which was protected or secured by the treaty between the United States of America and the French Republic, of the 30th day of April 1803, and which might have been perfected into a complete title, under, and in
 
 *133
 
 conformity to the laws, usages, and customs of the government under which the same originated, had not the sovereignty of the country been transferred to the United States.”
 

 In the first article of the treaty referred, to*, the consul .of the French Republic ceded to the United States, in full sovereignty, the province of Louisiana, with all its rights and appurtenances. The second article declares that in this cession “ are included the adjacent islands belonging to Louisiana, all public lots and squares, vacant lands, and all public buildings, fortifications, barracks and other edifices, which are not private property.”. ■The third article stipulates, “ that tlie inhabitants of the ceded territory shall be incorporated in the union of the United States, and admitted, as soon as possible, according to the principles of the federal constitution, to the enjoyment óf all'the. rights, advantages and immunities of citizens of the United States;' and in the meantime they shall be maintained and protected in the free enjoyment of their liberty, property, and the religion which they profess.”
 

 These are the stipulations which afford that protection or security to claims to land under the French or Spanish government, to which the act of congress refers. They extend to all property until Louisiana shall become a member of the union; into which the inhabitants are to be incorporated' as soon as possible, “ and admitted to all the rights, advantages and immunities of citizens of the United States.” That the. perfect -inviolability and security of property is among the§e rights, all will assert and maintain,
 

 The right of property then is protected and secured by the treaty; and no principle is better settled in this country, than that an.inchoate title to lands is property.
 

 'Independent of treaty stipulation, this right would be held sacred. The sovereign who acquires an inhabited territory, acquires full dominion over it; but this dominion is never supposed to divest the vested rights of individuals to property. The language of the treaty ceding Louisiana.excludes every idea of interfering with private property; of transferring lands which had been severed from the royal domain. The people change their sovereign. . Their right to property remains unaffected by this change.
 

 The inquiry then is, whether this concession "was legally
 
 *134
 
 made by the proper authorities “ and might have been perfected into a .complete title, under and in conformity to the laws, usages and customs of the government under which the same originated, had not the sovereignty of the country been transferred to the United States.”
 

 The concession was made in regular form on the 1st of April 1795, by Zenon Trudeau, lieutenant governor of the western part of Illinois, in which the land lay, by special order of the baron De Carondelet, governor-general of the province; given in consequence of a contract entered into by De Luzieres .with the'government for the supply of lead.
 

 By the royal order of
 
 1774,
 
 the power of granting lands, which had been vested in the intendants by an order of 1768, was revested in the civil and military governors of provinces, who retained it till 1798. White’s Compilation 218. In the execution of this power, the lieutenant governors or commandants of posts, as is fully shown by the proceedings before the various tribunals appointed under the authority of the United States, were employed to make the original concession and order of survey, and to put the grantee into possession. In 1795 then, when these acts were performed by the lieutenant governor, under the authority and.by the special order of the governor-general, those officers were “ the proper authorities and had full power to make the concession, and to perfect it by a complete title. Who can doubt that it would have been so perfected," “ in conformity to the laws, usages and customs of the Spanish government, liad not the sovereignty, of the country been transferred to the United States 1”
 

 A gi ant or a concession made by that officer, who is by law authorized to make it, carries with it prima facie evidence that it is within his power. No excess of them, or departure from them, is to be presumed. He violates his duty by such excess, and is.responsible for it. He who alleges that an officer entrusted with an important duty has violated his instructions, must show it. ■
 

 This subject was fully discussed in the United States v. Ar-r redondo, 6 Peters .'691 ; Percheman v. The United States, 7 Peters 51, and the. United States v. Clarke, 8 Peters
 
 436. It
 
 is unnecessary to repeat .the arguments contained in the opinions given by the court in those cases.
 

 
 *135
 
 The concession is unconditional; the land was regularly surveyed, and the party put into possession.
 

 The'objection made to this plain title is, that the concession is not made in pursuance of the regulations of O’Reilly.
 

 •This objection was considered in the cases heretofore decided by this court, and. especially in 8 Peters 455. It is apparent that those regulations were intended for the general government of subordinate officers; not to control arid limit the power of the person from whose will they emanated. The baron De Carondelet, we must suppose, possessed all the powers which had. been vested in Don O’Reilly; and a concession ordered by him is as valid as a similar concession* directed' by governor O’Reilly wpuld have been. Had governor O’Reilly made such a grant., could'it have been alleged that he had disabled himself by his instructions for the regulation of the conduct of his subordinate officers; instructions,, which the power that created must have been capable of varying or annulling; from exercising the power vested in him by the crown
 
 1
 

 The lead mine has been mentioned. But the act of congress, on which this case depends, contains no reservation of lead mines. It extends the jurisdiction, of the court to all claims, “ by virtue of any French or Spanish grant, concession, warrant or order of survey,” legally made by the proper authorities, &c. This is such a concession.
 

 The court is of opinion that the claim of the appellant is valid, and ought to be confirmed. The decree of the district Court is reversed and annulled ; and this court, proceeding to pronounce such decree as the district court ought to have given, doth declare the claim of the petitioners to be valid; and doth confirm their title to the tract of land in their petition mentioned, according to' the boundaries thereof, as, de-' scribed in the survey made by Antonio Soulard, principal deputy surveyor of upper Louisiana, on the 14th day of "December J799, and his certificate of die said survey, dated the 5th of March 1800, and appearing in' the record of thé proceedings of this cause.
 

 This cause.came on to be heard on the transcript of the record from the district court ox"'the United States for the district
 
 *136
 
 of Missouri, and was- argued by counsel; on consideration-whereof, this court is of opinion that the claim of the appellant is valid, and ought to be confirmed. Whereupon, it-is ordered, adjudged and decreed by this court, that the decree of the said district court in this cause be, and the same is hereby reversed and annulled ;■ and this court, proceeding to pronounce such decree as the said district court ought to have given, doth declare the claim of the petitioner to be valid ; and doth confirm his title to the tract of land in his petition mentioned, according to the boundaries thereof, as described in the survey - made by Antonio Soulard, principal deputy surveyor of upper-Louisiana, on the' 14th day of December
 
 1799,
 
 and his certificate of the said survey, dated the 5th of March 1800, and appearing in the record of the proceeding's of the cause.