## Wayda's Estate.

*Decedents' estates — Domicile — Intention—Alien—Lex loci—Transfer of territory—Words and phrases.*

1. The succession to the personal estate of an intestate dying in this country, having his domicile in a foreign country, is to be regulated by the laws of the country in which he was domiciled at the time of his death.

2. If the territory in which he was domiciled is transferred to another sovereignty after his death, the change of sovereignty does not divest any vested rights in his property.

3. In such case, the courts of the new sovereignty have the right to administer his estate.

4. Domicile is a residence at a particular place, accompanied by an intention to remain there for an unlimited time. No length of residence without the intention of remaining will constitute domicile.

5. Where an alien has a residence in Pennsylvania, but has sent his family to the country of his birth, and has repeatedly expressed his intention to return to his native country, his domicile at his death will be deemed the land of his birth.

Petition to pay over money. O. C. Schuylkill Co.

Edgar Downey, for petitioner; T. A. McCarthy, for administrator.

WILHELM, P. J., Jan. 14, 1924.—On Dec. 20, 1920, the account of T. A. McCarthy, Esq., administrator of the estate of John Wayda, who died in the Borough of St. Clair, was confirmed absolutely after allowing certain credits, but the court declined to make a distribution of the balance in the hands of the administrator because sufficient information was not produced to warrant a distribution.

On or about Nov. 1, 1923, M. Szawleski, Vice-Consul of the Republic of Poland, presented his petition to the court, setting forth that the Republic of Poland has been in existence since the latter part of 1918, and maintains its consulates in the United States, one of which is in the City of New York, which consulate has jurisdiction over the subjects of Poland and their property in the County of Schuylkill, and praying that Thomas A. McCarthy, Esq., administrator, be directed to pay the balance in his hands to the Consulate General of the Republic of Poland at New York.

John Wayda was a subject of Austria-Hungary, and resided, before coming to America, in that part of Austria-Hungary known as Galicia. He came to this country some years ago, and at least two of his four children were born in America. He returned to Austria-Hungary on at least one occasion since his arrival in this country, and his family were living in Galicia at the time of his death, and had been residing there several years before his death. Subsequent to his second arrival in America, he was employed in the mines, and his death occurred in the Borough of St. Clair, in the early part of November, 1918, before the close of the World War. At the time of his death his wife and four children were living in Galicia, and are now living there.

Testimony was taken for the purpose of establishing the domicile of the decedent, and the witnesses examined seemed to establish the fact that it was the intent of the decedent to return to Galicia, and that he had not determined to make this country a permanent place of residence. These witnesses are corroborated by the fact that the decedent took or sent his family to Galicia, and that it was his purpose to return there.

The wife and all of the children are living in Galicia, which was formerly a part of Austria-Hungary, and is now a part of the Republic of Poland. They are the decedent's next of kin, and are represented in this proceeding by the Consulate General of the Republic of Poland, both in his consular capacity

and as attorney-in-fact for the widow in her own right and as guardian for her children.

The balance in the hands of the administrator arises from personal property, and an alien is capable of owning personal property in this State under our law, and may dispose of the same by last will and testament, and upon his dying intestate, said property devolves upon his next of kin.

If the decedent had been domiciled in this State, distribution should be made in accordance with the laws of Pennsylvania, and if the decedent was not domiciled in this State, the succession to his property is regulated by the laws of the country in which he is domiciled at the date of his death.

A domicile is a residence at a particular place, accompanied by an intention to remain there for an unlimited time; a residence accepted as a final abode. Domicile is residence combined with intention. A man can have but one domicile for one and the same purpose at any one time, though he may have numerous places of residence. His place of residence may be, and most generally is, his place of domicile, but it obviously is not by any means necessarily so. For no length of residence, without the intention of remaining, will constitute domicile.

The facts presented in the testimony seem to establish that John Wayda was a citizen of Galicia, and that his domicile was not in St. Clair. He had sent or taken his family from St. Clair to Galicia, and he frequently expressed his intention of returning to his native country; therefore, his domicile seems to be established in Galicia.

The Intestate Act of June 7, 1917, P. L. 429, which is practically a repetition of the Act of April 8, 1833, P. L. 315, provides: "Nothing in this act contained, relative to a distribution of personal property among kindred, shall be construed to extend to the personal estate of an intestate whose domicile at the time of his death was out of this Commonwealth;" and it has been held under this act that the succession to the personal estate of an intestate dying in this country, having his domicile in a foreign country, is to be regulated by the laws of the country in which he is domiciled at the time of his death: Jarcics's Estate, 3 Westmoreland L. J. 14; Estates of Foreign Intestates, 68 Pitts. L. J. 1.

At the time of his death John Wayda was a subject of Austria-Hungary. Since his death the Republic of Poland was established, and the Republic of Poland includes in its territory that portion of Austria-Hungary known as Galicia, the domicile of John Wayda.

On Jan. 1, 1918, the Polish Ministry of Justice took over the Austrian courts and administration of law and justice in Galicia. The law of Austria-Hungary, effective at the date of death of John Wayda, determines the right of succession to his estate. It is said in 22 Cyc., 1729: "On the transfer of sovereignty of a country, the inhabitants are protected in the possession of their private property. Such is the law of nations, even in cases of conquest. The change of sovereignty does not divest any vested rights of property in individuals, whether inchoate or consummated, or whether contingent or absolute."

In Delassus v. United States, 9 Pet. 117, it was said: "The sovereign who acquires an inhabited territory acquires full dominion over it, but this dominion is never supposed to divest the vested rights of individuals to property."

It was said in Delassus v. United States: "The people changed their sovereign; their right of property remains unaffected by this change." There-

4 D. & C.

fore, the law of Austria-Hungary in effect at the date of the decedent's death determines the right of succession to his estate, and the Republic of Poland, having established its dominion over the territory in which the decedent had his domicile, its courts are the proper tribunal to administer his estate. In order to effect this object, according to the law of nations, the property must be transmitted through the consular representatives into the jurisdiction of the courts which have control over the estates of intestates.

The recognition by the Federal Government of the Consular General of the Republic of Poland has been established by the evidence. Therefore, his certificate, under his consular seal, acknowledging the receipt of the money for transmission to the place of domicile for distribution to those entitled thereto under the laws of the domicile, may be required by the accountant for his protection.

And now, Jan. 14, 1924, T. A. McCarthy, Esq., administrator, is authorized and directed to pay to the Consular General of Poland the balance found to be in his hands for distribution, to wit, the sum of $289.56, less any record costs incident thereto. From M. M. Burke, Shenandoah, Pa.