Alexander R. CHISOLM and George H. Penniman, citizens and residents of the State of New York, Joseph M. Fox and John Wister, citizens of the State of Pennsylvania,

v.

Edmund A. CAINES, commonly called Ball Caines, Archie Thomson and Alexander Thomson, W. B. Smith and George Mills, citizens and residents of the State of South Carolina.

Equity No. 57.

United States District Court
E. D. South Carolina.

March 20, 1954.

Hagood, Rivers & Young, by G. L. B. Rivers, Charleston, S. C., for petitioners.

Smith & Moore, by J. B. Moore, Georgetown, S. C., Rosen & Rosen, by Sylvan L. Rosen and C. C. Grimes, Jr., Georgetown, S. C., for respondents.

WILLIAMS, District Judge.

On December 3, 1953 I issued an order requiring Abe I. Fogle, L. C. Cooper, R. V. McDaniel, W. A. Gasque, Sr., and M. L. Hopkins to appear before me in Charleston, South Carolina, to show cause why they should not be permanently enjoined from trespassing on the property described as follows:

"All that piece, parcel and portion of the marsh land, being a part of said Friendfield Plantation, situate, lying and being in the County of Georgetown and State of South Carolina, bounded by Town Creek, Jones Creek and Muddy Bay, together with the several islands situate in and surrounded by the waters of said Muddy Bay, as represented on a plat of said Friendfield Plantation compiled by William M. Murdock in the year 1876, and recorded with the Lease; also fifty (50) acres of upland at or near Fraser Point on said Friendfield Plantation."

On October 31, 1893 Judge Simonton issued an order restraining certain named defendants from trespassing on the above-described tract of land, and provided in the restraining order that it

should remain in effect until a final decision was made on motion for temporary injunction. The State of South Carolina intervened but later withdrew its intervention on October 19, 1894.

Several orders were issued by Judge Simonton in connection with the above matter, and on January 9, 1897 an order of injunction was issued which reads as follows:

"On this ninth day of January 1897 comes into Court the Petitioners above named by Charles Inglesby, Esqr., their Solicitor, and called for the Return to the Rule to Show Cause issued therein bearing date 28th November 1896, and no cause being show by M. T. Doig, W. A. Truesdell, S. N. Truesdell, S. P. Truesdell and James McGuire or either or any of them, it is

"Ordered, Adjudged And Decreed, that the said M. T. Doig, W. A. Truesdell, S. N. Truesdell, S. P. Truesdell and James McGuire be included as Defendants in this case and in the injunction heretofore issued therein and that they and each and every of them and their associates and all other persons whomsoever be enjoined from entering upon and trespassing upon the lands covered by the lease held by the Plaintiffs and the creeks flowing into said lands heretofore declared by this Court to be streams not navigable; to wit: Duck Creek, Muddy Creek, Sixty Bass Creek, Bread and Butter Creek, and the other small creeks therein mentioned."

On December 11, 1902 Judge Simonton issued a rule to show cause in the original case to certain named persons who were not parties to the original suit. The returns to the rule to show cause were held insufficient and in an order dated March 2, 1903, Judge Simonton held:

"To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued nor to have been actually served with a copy of it, so long as he appears to have had actual notice."

Reference has been made that the State of South Carolina intervened but later withdrew its intervention on October 19, 1894. It does not clearly appear why the State withdrew its intervention but it is safe to assume that it was withdrawn because of the report which was filed in the Chisolm case, dated December 21, 1893 by James J. Gibbs, Agent and Surveyor General of the Commissioners of Vacant and Abandoned Lands of the State of South Carolina. This certificate showed that the marsh lands lying between Jones Creek and Town Creek were not vacant lands but were a part and parcel of the estate known as Friendfield, the property of the Donaldsons, and included in this estate and duly and properly returned for taxation. He also stated, among other things:

"First:

On the 5th day of December 1718 The Lords Proprietors of Carolina granted to the right honorable John Lord Carteret a Barony said to contain 12000 acres, more or less, situate on Waccamaw Neck and bounded by Waccamaw River, Winyah Sound and the Ocean, and called the Barony of Hobcaw. This Grant was attested and recorded in London and Carolina. The lands of Friendfield are a portion of this Barony.

"Second:

On the 18th day of Feby. 1730 the Right Hon. John Lord Carteret sold said Barony to John Roberts of England. The latter had the Barony located in 1733, and surveyed in 1736, when it was found to contain 13970 acres of land, all of which proceedings are of record in Book of Grants 1694–1739, Pages 455 to 571. The boundaries of said Barony as then given by the sur-

vey are the Waccamaw River, Winyah Sound, The Creek now called Jones Creek, then called "The North Inlet Creek, and part of North Island and part of DeBordieu Island and on the North East by lands of George Pawley."

At the final hearing in the original cause dated January 24, 1895, Judge Simonton issued a decree which is reported as Chisolm v. Caines, C.C., 67 F. 285, on page 289, in which he states as follows:

"The body of marsh in question comprises a part of the Carteret barony, and its grant from the crown bears date 1733. The grant refers to a plat, and on that plat the boundary is Winyah Bay. The grant covers the marshes, eo nomine. At the trial the original grant was not produced, nor was there any evidence of its existence, beyond an official copy, or of its loss. There was evidence that it was not in the possession, custody, or control of the complainants or the lessors. An exemplification of the grant, out of the office of the secretary of state, under the seal of the state, was put in evidence, and admitted. Rev.St.S.C.1893, § 2360; Holmes v. Rochell, 2 Bay, S.C., 487; [Doe ex dem.] Patterson v. Winn, 5 Pet. 233 [8 L.Ed. 108]; United States v. Sutter, 21 How. [170] 175 [16 L.Ed. 119]. As has been seen, the boundary of this land is Winyah Bay. Now, between the mainland and Winyah Bay is a navigable stream,—Jones Creek,—a natural boundary. So the shore of the mainland cannot be said to be the boundary of the land granted. Beyond Jones Creek, and nearer Winyah Bay, is another navigable stream,—a natural boundary. Yet the plat calls for the bay as the boundary. If Winyah Bay washed the shore of the mainland, it might be said that the boundary of the land was high-water mark on that shore. But such is not the case.

This grant was direct from the sovereign, and must be recognized by the state,—the successor of the sovereign. Delassus v. U. S., 9 Pet. 117 [9 L.Ed. 71]; Strother v. Lucas, 12 Pet. 410; Jones v. McMasters, 20 How. 8 [15 L.Ed. 805]. It was distinctly recognized by the province of South Carolina, by an act of assembly (Rev.St.S.C.1893, § 1876).

The Judge further says at page 296:

"As a conclusion from all that has been said, Town creek and Jones creek, with Bread and Butter creek, are navigable streams. In them the public can enter and pass through at will, without let or hindrance. With regard to the other creeks, lying, as they do, wholly within the land of the complainants, with no regular outlet after entering therein, except over their land, they are not navigable streams, and the public have no right to be in them, except with their permission."

The respondents in the instant case earnestly urge:

1. That the decree of injunction rendered in the above captioned case has long since lost its force and effect by operation of law.

2. That the lands in question are still the property of the State of South Carolina even though it was specifically held in the case of Chisolm v. Caines, 67 F. 285, that they were not the property of the State of South Carolina.

This rule to show cause is governed not by decisions that were rendered years ago, but by Rule 65(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to

the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

There seems to be no question that prior to the adoption of this rule some courts had held that an injunction could be issued against the world, and that everyone who had notice of it was bound by its terms. Since the passage of this rule, however, it appears to be quite clear that the injunction is binding "only upon the parties to the action, their officers, agents, servants, employees, and attorneys and upon those persons in active concert or participation with them who received actual notice of the order by personal service or otherwise."

It is not claimed in this proceeding that the respondents Abe I. Fogel, et al. were agents, servants, employees, and attorneys of any of the original parties to the above action. No proof has been offered that these persons were in active concert or participation with the original parties to the action. There is some evidence that some of the respondents knew of the existence of the injunction. The injunction by its terms was broad enough to cover every person who knew of its existence and if the court had the power to issue this injunction there seems to be no question that the respondents could be held guilty of contempt if it were proved that they knew of its existence and acted in active concert or participation with the original parties to the above action.

██ I do not question the authority of Judge Simonton to issue the injunction which was issued in 1893. There seems to be no doubt, however, that such an injunction cannot be issued under the present rules of civil procedure, for it is quite clear that no injunction can be issued which will bind anybody except parties to the action, their officers, agents, servants, employees, and attorneys or those who were in active concert or participation with them. It

therefore follows that since no evidence has been offered to show that the respondents were officers, agents, servants, employees, attorneys or in active concert or participation with the original parties to the suit they cannot be held guilty of contempt of court under the injunction issued by Judge Simonton. In Section 73.88, Vol. 14, Cyclopedia of Federal Procedure (3d), at page 813, the following statement is made:

"Although an injunction purports to bind persons not parties or in privity with them, whose rights have not been adjudicated, it cannot do so. The order cannot affect, and should not enjoin, a person not within the jurisdiction of the court, and it has been held that a corporation of one state cannot be affected by an injunction issued by a federal court in another state. But the fact that the party to be enjoined is outside the district is not fatal. The injunction cannot issue against or bind the public at large."

In Section 87.24, Vol. 15, Cyclopedia of Federal Procedure (3d), at page 600, the rights under Rule 65(d) are defined:

"* * * under Rule 65(d) of the Rules of Civil Procedure persons who are not parties to an action in which an injunction is issued or officers, agents, servants, employees or attorneys of the named defendants therein, and who do not act in concert or participate with the named defendants, cannot be adjudged in contempt for violating the injunctional decree, even though they act with knowledge of the injunction."

In one of the most interesting cases on this question, Kean v. Hurley, 8 Cir., 179 F.2d 888, 889, the following injunction was issued:

" 'It is further, Ordered, Adjudged and Decreed by the Court that all of the above named defendants, or any or either of them, and all persons whomsoever from and after the time they severally obtain notice or knowledge of the issuance

of the injunction pursuant to the original decree entered herein on May 11th, 1925, and as this day amended, are permanently and perpetually enjoined from going into or upon the lands described in said original decree, as this day amended, or going over the same or taking any equipment, traps, or other paraphernalia into or upon the same, and from hunting, shooting, trapping or trespassing thereon, or from aiding, abetting, assisting, counseling or encouraging any other person or persons in violating said injunction, and from removing or attempting to remove any game, animals or property therefrom, or injuring the same.' "

The Court of Appeals held that the District Court was in error in issuing an injunction enjoining the world at large "that the appellees, who were not parties to the action, and who were not officers, agents, servants, employees or attorneys of any of the defendants therein, and who did not act in concert or participate with the named defendants, could not properly be adjudged in contempt for violating the injunctional decree."

In the case of Regal Knitwear Co. v. N. L. R. B., 324 U.S. 9, 65 S.Ct. 478, 481, 89 L.Ed. 661, the court said:

"* * * The courts, nevertheless, may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law. * * *"

Another interesting case on this point is Alemite Mfg. Corp. v. Staff, 2 Cir., 42 F.2d 832. The question is discussed as follows:

"* * * On the other hand no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court."

The second contention of the respondents is: That the lands in question are still the property of the State of South Carolina even though it was specifically held in the case of Chisolm v. Caines, 67 F. 285 that they were not the property of the State of South Carolina.

■ This must be emphatically rejected. The petitioners have no right to question the findings in the case of Chisolm v. Caines, supra. The State of South Carolina was a party to this action and it is bound by the decree. The only person who could attack the validity of the above decree would be the State of South Carolina. There is grave question as to South Carolina's right to now question the decree. Judge Simonton clearly held that the property in question was granted to the Right Honorable John Lord Carteret and that the owner at the time of Judge Simonton's decree claimed title under this grant, and that the marsh land although ordinarily owned by the State was granted under the grant mentioned above. There is no question that under the decision of Chisolm v. Caines, supra, the State of South Carolina has no interest in the marsh lands which are described above. The decree of Judge Simonton is full and complete and forecloses the rights of all parties except the owners to the use of this property.

Under the pending rule to show cause there is no showing of a threat of repeated trespass by respondents or of concert of action between the original defendants in this cause and the respondents to this rule to show cause. It is my opinion that the owner of the property

may in proceedings instituted by her secure an injunction to protect her property against trespass.

The rule to show cause is hereby dismissed. Let the affiant N. E. Taylor pay the costs and disbursements.