481 A.2d 879

NESHAMINY WATER RESOURCES AUTHORITY

v.

DEL–AWARE UNLIMITED, INC., Albert Giordano, Colleen Wells, Abbie Hoffman, Marlene Scolie, John M. Krauss, Val Sigstedt, Raymond H. Vannoy, William J. Collins, Perna Argue, Hans Otto Reimann, Jr., Anita J. Griffith, Lyle Rickards, Jr., Fulton A. Grosse, Sharon M. Cannon, Richard H. McNutt, Marc Feinstein, John D. Irwin, Jr., Eugene R. Child, Edward Nasatka, Richard H. Torkelson, and all unnamed persons, firms and corporations acting in concert with

Appeals of Joseph GRINROD, William Hines, III, Bruce Crooks, Bonnie McCormick, Mary Jane Olczak and Raphaelle Delvecchio.

Superior Court of Pennsylvania.

Argued Jan. 17, 1984.

Filed Aug. 17, 1984.

462

J. Michael Ruttle, Newton, for appellants.

David L. Creskoff, Philadelphia, for appellee.

Before ROWLEY, HESTER and ROBERTS, JJ.

ROWLEY, Judge:

This is a direct appeal from the orders of July 15, 1983 and July 19, 1983, adjudging appellants in civil contempt of court for wilfully disregarding a preliminary injunction previously issued by the trial court on January 10, 1983. Upon a thorough review of the record in this case, we affirm the trial court's adjudications of contempt.

Appellee, the Neshaminy Water Resources Authority (NWRA), is an independent Municipal Authority formed by the Commissioners of Bucks County. This dispute arose in response to the NWRA's attempts to build a water pumping

station on an isolated portion of property owned by NWRA, and located along the banks of the Delaware on Route 32 in the Village of Point Pleasant, Bucks County. The proposed purpose of the station was to draw water from the Delaware River in order to supply supplemental water for the use of residents in Bucks and Montgomery Counties, and to supply water to facilities of the Philadelphia Electric Company that would eventually be used at the Limerick Nuclear Power Plant. General construction work on the site was scheduled to begin on January 10, 1983. During the first week in January of 1983, demonstrations occurred at the site of the pumping station involving approximately 50 to 100 residents and other individuals who were opposed to the water diversion project. The demonstrations drew a great deal of public attention and resulted in blocking ingress to and egress from the construction site. Consequently, on January 6, 1983, the NWRA filed a complaint in equity requesting a preliminary injunction to enjoin the demonstrations. After a hearing, the trial court determined that NWRA would sustain immediate, irreparable injury if the demonstrations continued and work was delayed thereby, and consequently, the following preliminary injunction was entered:

[T]he Court, effective immediately upon entry hereof, hereby preliminarily enjoins and restrains Defendants and each of them including unnamed persons, firms and corporations acting in concert therewith from all of the following until further Order of this Court:

(A) Trespassing upon all of the premises of Plaintiff including those described in Exhibits "A" and "G" attached to their Complaint in Equity a copy of which is attached hereto which descriptions are herein incorporated by reference and upon all of the easements of Plaintiff and the parking lot of the Mountainside Inn as described in hearing Exhibits "NWRA 6, 7 A and B" which are likewise so incorporated herein.

(B) Blocking ingress to and egress from the aforesaid premises of Plaintiff by Plaintiff, its contractors or any

other persons, firms or corporations specifically authorized or licensed by Plaintiff to enter thereupon, by any means whatsoever including, but not limited to Defendants parking vehicles, placing objects or persons in a manner preventing ingress and egress either directly upon said premises or upon River Road in the vicinity of said premises or upon the right of way thereof or upon the premises of others in the immediate vicinity of Plaintiff's said premises by reason whereof Plaintiff's access to its premises would be blocked.

(C) Interfering with, blocking or disrupting in any manner whatsoever with the scheduled orderly commencement and completion of the work to be performed upon all of the above premises and in the Delaware River and upon the towpath of the canal by all contractors employed by Plaintiff and other upon or near said premises with the express consent of Plaintiff for the purpose thereof.

(D) Granting Plaintiff such other and further relief as the Court may determine to be justly proper, including but not limited to compensatory and punitive damages.

The Defendants enjoined in this order included, among others, Del-Aware Unlimited, Inc., a non-profit corporation whose members were opposed to the water diversion project, and Albert M. Giordano.

The entry of the injunction did not end the controversy. Shortly thereafter NWRA requested the trial court to hold the named defendants in civil contempt, alleging that they were actively violating the court's order. Numerous other pleadings were then filed by both parties and depositions and hearings ensued. On July 11, 1983, major demonstrations were again held at the site of the pumping station. The Sheriff's department had been notified of the planned protest beforehand, and a number of deputies were dispatched to the site at 7:30 a.m. on July 11, 1983. They found Albert Giordano positioned atop a crane located at the site with a rope fastened about him, and approximately thirty individuals, including appellants, Joseph Grinrod, Wil-

liam Hines, Bonnie McCormick and Mary Jane Olczak, parading in a semi-circle along the road adjoining the site of the pumping station. One of the deputies read the January 10, 1983 order aloud to the protestors. While it was being read, the protestors sang in unison. A few copies of the injunction were then taped to a fence on the property. Mr. Giordano continued to maintain his position atop the crane. Eventually, the construction workers present at the site lowered the crane and Mr. Giordano was taken into custody. A number of protestors then crossed the access road directly onto the property, forming lines by locking arms. The lines then moved toward the construction area where the crane was situated. As this occurred, these individuals were arrested. The appellants previously mentioned were among the persons taken into custody. On July 14, 1983, additional demonstrations took place at the site of the pumping station. With arms linked, the protestors again crossed onto NWRA property, blocking the front gate and preventing ingress to, and egress from, the construction site. Appellants Bruce Crooks and Raphaelle Delvecchio were among the protestors arrested by the Sheriff's department on that day. The procedures employed by the trial court in both situations were identical.

*Immediately* after being taken into custody, appellants were brought before the Bucks County Court of Common Pleas. The trial judge issued a rule upon each protestor to show cause why he/she should not be held in contempt of court for violating the January 10, 1983 order. Hearing dates were then set for July 15, 1983 and July 19, 1983, respectively.

At the July 15, 1983 hearing, deputies from the Sheriff's office testified to the events of July 11, 1983 as described above. In addition, the resident engineer responsible for construction at the site testified that work was delayed during the demonstration. The defendants presented only one witness in order to clarify confusion regarding the identity of one of the protestors. Following this hearing, the court made the rules to show cause absolute against

Appellants Grinrod, Hines, McCormick and Olczak, among others. The judge then stated that a second hearing was required in accordance with the criteria set forth in *Crislip v. Harshman,* 243 Pa.Super. 349, 365 A.2d 1260 (1976). Accordingly, he asked counsel for all parties whether they wished to proceed with the hearing at that time or schedule it for the following week. After a ten minute recess, counsel for the protestors and counsel for NWRA agreed to proceed with the second hearing immediately. No further evidence was offered. On the basis of the evidence presented at the prior hearing, the trial court determined that appellants were guilty of wilful contempt of court for failing to abide by the January 10, 1983 order. The trial judge characterized the contempt as civil, stating that he sought only to compel compliance with the injunction order. Thus, the court allowed any person held in contempt to purge himself or herself of that contempt by merely making a statement that he or she agreed to abide by the order in the future. Appellants refused to make such statements and they were then confined to Bucks County Prison. However, the judge informed them that they could purge themselves of the contempt at any time and be released immediately if they agreed to observe the terms of the injunction. In addition, the court further limited the incarceration to the hours between 8:00 a.m. and 6:00 p.m., when work was progressing at the site of the pumping station.

At the July 19, 1983 hearing, counsel for Appellants Crooks and Delvecchio stipulated that their behavior during the July 14, 1983 demonstration was in violation of the terms of the January 10, 1983 injunction. Thus, these appellants were likewise adjudicated in contempt and conditionally confined to Bucks County Prison until such time as they agreed to abide by the terms of the injunction. On appeal from the trial court's adjudication of contempt, appellants contend that: 1) the evidence was insufficient to support a finding that appellants, Grinrod, Hines, McCormick, and Olczak were within the class of persons enjoined by the injunction order; 2) the trial court did not follow the proper procedure for an adjudication of civil contempt; and,

3) the trial court incorrectly treated these proceedings as civil in nature rather than criminal. We find each of these claims to be without merit.

It is axiomatic that an appellate court's scope of review in equity matters is very narrow. The trial court's findings will not be disturbed absent a clear error of law or abuse of discretion. *Commonwealth Department of Environmental Resources v. Pennsylvania Power Co.*, 461 Pa. 675, 686, 337 A.2d 823, 829 (1975). Each court is the exclusive judge of contempts against its process, and on appeal its action will be reversed only when a plain abuse of discretion occurs. *East & West Coast Service Corp. v. Papahagis*, 344 Pa. 188, 190, 25 A.2d 341, 342 (1942).

Appellants first contend that the evidence was insufficient to sustain a finding that Hines, Grinrod, Olczak and McCormick were within the class of persons enjoined by the injunction decree.[1] We note at the outset that this claim was not raised in the trial court. Appellants appeared at the hearings held to determine whether they were in contempt of court and they were represented by counsel. At no time did any appellant claim that he or she was not bound by the original injunction decree. Issues not raised in the trial court may not be raised on appeal and are deemed waived. *Irrera v. SEPTA*, 231 Pa.Super. 508, 331 A.2d 705 (1974).

Nonetheless, we are compelled to point out that persons *not* parties to an injunction order are bound to observe its restrictions when those restrictions are known to such persons to the extent that they must not aid and abet its violation by others. In addition, if persons are not parties to the injunction order, but its terms are known to them and they are within the class intended to be restrained, they may not violate the injunction's restrictions. *Brightbill v. Rigo, Inc.*, 274 Pa.Super. 315, 418 A.2d 424

---

1. At the hearing held on July 19, 1983, Appellants Crooks and Delvecchio stipulated to facts indicating that they were bound by the terms of the injunction and that they had violated its restrictions. Thus, on appeal, these appellants did argue that they were not bound by the injunction.

(1980). It is clear that formal service of the order upon the alleged violators is not necessary prior to a contempt adjudication, as long as the parties had actual knowledge of the order. *See Thompson v. Johnson,* 410 F.Supp. 633 (E.D.Pa. 1976); *Farber v. Rizzo,* 363 F.Supp. 386 (E.D.Pa.1973); *Power Authority v. Moeller,* 395 N.Y.S.2d 497, 57 A.D.2d 380 (1977).

■ The injunction order herein preliminarily enjoined the defendants named in the order and *"unnamed persons,* firms and corporations *acting in concert therewith ..."* from engaging in certain conduct on the property of NWRA. (emphasis added.) Del-Aware Unlimited, Inc. and Albert M. Giordano were named parties in this order. Despite the fact that the order was read to the protestors and posted at the site, appellants remained there while Albert Giordano was strapped to the crane in the construction area; they sang songs in unison while the terms of the injunction were read aloud; they were among the group of persons who formed lines by linking arms with other protestors on NWRA property. Appellants had actual knowledge of the order, since.it was read to them and posted on the site. Nonetheless, appellants acted in concert or combination with a named defendant in preventing and interfering with construction work on private property owned by NWRA without NWRA's permission and their conduct fell within the scope of the injunction decree. *See United States v. Hall,* 472 F.2d 261 (5th Cir.1972); *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965); *Walker v. Birmingham,* 279 Ala. 53, 181 So.2d 493 (1965) aff'd 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

■ It appears that Albert Giordano was the only named defendant in the original injunction order who was present during the demonstrations at the site on July 11, 1983. However, Del-Aware Unlimited, Inc. was also named in the original order and where an injunction has issued against a corporation, it may be enforced against officers, agents, representatives, and employees of the corporation who knowingly violate its provisions. *See Brightbill v. Rigo, Inc., supra; Americans Be Independent v. Com-*

*monwealth of Pennsylvania,* 14 Pa.Commw. 179, 321 A.2d 721 (1974). Although Appellant Grinrod claims that he was not bound by the injunction order, our examination of the record reveals that as of May 13, 1983, two months before these contempt proceedings, he was listed as a member of Del-Aware Unlimited, Inc. (Notes of Deposition May 13, 1983, NWRA exhibit # 1). No evidence was presented indicating that Grinrod was not a member of Del-Aware on July 11, 1983, and thus, we can only infer that his membership continued. Accordingly, Grinrod was specifically bound by the injunction order and his claim that he was not within the class of persons enjoined is patently frivolous.[2]

Appellants next contend that the trial court failed to afford them the proper procedural safeguards before holding them in contempt of court. Specifically, appellants claim that the procedure employed by the trial court lacked the following five essential elements enunciated in *Crislip v. Harshman, supra:*

1) a rule to show cause why attachment should not issue; 2) an answer and hearing; 3) a rule absolute (arrest); 4) a hearing on the contempt citation; and 5) an adjudication of contempt.

243 Pa.Super. at 352, 365 A.2d at 1261; *see also Altemose Construction Co. v. Building and Trades Council of Philadelphia,* 449 Pa. 194, 296 A.2d 504 (1972). However, the five-step procedure outlined above was not necessarily ap-

---

**2.** Appellants also argue that the language of the injunction order which bound all persons acting "in concert" with the named defendants was too broad because, in effect, it bound the whole world. Federal Rule of Civil Procedure 65(d) provides that an injunction binds parties, their servants and agents and "those persons in active concert or participation" with the parties named. The "in concert" language of that rule was adopted to restrict, rather than broaden, the reach of injunctions. *See Vuitton et FILS, S.A. v. Carousel Handbags,* 592 F.2d 126 (2nd Cir.1979); *Chisolm v. Caines,* 147 F.Supp. 188 (E.D.S.C.1954). Whether a person who is not a party to the injunctive decree is bound by it depends on the facts of each case, *Vuitton et FILS, S.A. v. Carousel Handbags, supra,* and we have determined that the evidence herein conclusively demonstrates that appellants were bound to observe the terms of the injunction order. The "in concert" language of the injunction order in this case was not impermissibly broad.

plicable herein. On the contrary, we find that this case is governed by our holding in *Rouse Philadelphia Inc. v. Ad Hoc '78, et al.*, 274 Pa.Super. 54, 417 A.2d 1248 (1979).

■■■ These contempt proceedings were grounded upon appellants' violation of a preliminary injunction that had been entered after a full hearing. The terms of the injunction were read aloud to all protestors and posted in plain view before those persons were taken into custody for its violation.[3] Pursuant to Pa.R.C.P. 1529(c) governing equity actions, "[a] party who fails to comply with a decree may be arrested by attachment ..." Where, as here, the contemnors are in custody pursuant to this rule the first three steps specified in *Crislip* and *Altemose* are redundant. *Rouse Philadelphia Inc. v. Ad Hoc '78, et al.*, 274 Pa.Super. at 74, 417 A.2d at 1259. In *Rouse*, this court stated:

> We hold that contempt proceedings which are predicated upon the violation of an order which has been served on the contemnor and entered after a full hearing on the merits thereof may be commenced by attachment, and due process requires no more than notice of the violations alleged and opportunity for explanation and defense. *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970).

*Id.; see also Americans Be Independent v. Commonwealth of Pennsylvania, supra* (where civil penalties for violation of injunction are sought, the following process is due: 1) accused must be informed of accusations against him; 2) he must be given timely notice and opportunity to answer and defend; and 3) proceedings must be fair and impartial).

■■■ In the instant case, appellants were certainly given notice of their alleged violation of the January 10, 1983 order when the sheriff read the injunction order and posted it at the site, and additionally, when the trial court issued the rule to show cause upon them in open court. Appellants were afforded an opportunity to answer and be heard

3. Formal service of such an injunction is not required prior to the contempt adjudication as long as the parties involved had actual notice of the order. *See, Thompson v. Johnson*, 410 F.Supp. 633 (E.D.Pa.1976).

since they were released and a hearing was scheduled for a later date. Furthermore, after the initial hearing was held and the rule to show cause was made absolute, the court afforded appellants a *second* hearing on the contempt citation. Indeed, if the five-step *Crislip* procedure were applicable in this case, we would find that the trial judge did his best to comply with that procedure in a case that presented unique circumstances. As in *Crislip,* although the trial judges' description of the procedures he followed may not have tracked the language of the civil contempt rules, it is clear that, in substance, the procedure followed was proper. *See Crislip v. Harshman,* 243 Pa.Super. at 353, 365 A.2d at 1262. *Compare Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia, supra* (appellants were not afforded opportunity to consult with counsel or to show cause why they should not be held in contempt in proceedings found to be consonant with direct criminal contempt).

Finally, appellants argue that the trial court erred in treating these proceedings as civil rather than criminal in nature. We disagree.

The controlling factor in drawing the line between civil and criminal contempt is the "dominant purpose and objective of the court's order." *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia,* 449 Pa. at 218, 296 A.2d at 517. If the dominant purpose is to coerce the contemnor to comply with the court's directive, then the contempt is civil. *Rouse Philadelphia Inc. v. Ad Hoc '78, et al.,* 274 Pa.Super. at 71, 417 A.2d at 1258. Confinement for civil contempt must impose a condition that the contemnor is capable of performing which has the effect of purging the contemnor of the contempt. *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975).

In this case, the trial judge specifically stated that he held appellants in *civil contempt* of a previous court order and that he sought only to compel compliance with that court order. Indeed, he characterized the contempt adjudication as a "conditional disposition"; the condition

imposed upon appellants for purging themselves of the contempt being merely that each person make a statement that he/she agreed to abide by the terms of the injunction decree. Our Supreme Court has stated that "[w]hen the petitioners carry 'the keys of their prison in their own pockets,' (citation omitted), the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.' (citation omitted)." *Riccobene Appeal,* 439 Pa. 404, 422, 268 A.2d 104, 114 (1970).

Several factors have been identified as characteristic of a civil contempt proceeding:

> (1) where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion."

*Rouse Philadelphia Inc. v. Ad Hoc '78, et al.,* 274 Pa.Super. at 71–72, 417 A.2d at 1258 quoting *Philadelphia Marine Trade Association v. International Longshoreman's Association,* 392 Pa. 500, 140 A.2d 814 (1958).

■ The NWRA is an independent municipal authority created by Bucks County pursuant to the Municipal Authorities Act of 1945, 53 P.S. § 301, et seq., and thus, it is an "arm" of the county government. Nonetheless, the other factors associated with a civil contempt are present here. The contempt proceedings were entitled in the original injunction action and handled as a continuation thereof by the trial judge. Holding the protestors in contempt of court afforded relief to NWRA, thereby protecting it from unlawful interference that would delay construction work and ultimately result in lost revenues from the sale of water.

Although the increased water supply would arguably benefit the public,[4] the major purpose of the contempt was to prevent losses to NWRA. Appellants argue that NWRA was not the complainant since the Sheriff's office enforced the injunction order and the court issued rules to show cause on its own motion. However, counsel for NWRA was present at each stage of the contempt proceedings and it was NWRA that presented evidence at the hearings to prove that appellants had violated the injunction order. Finally, the acts complained of in this case did not rise to the level of serious criminal conduct. No damage to NWRA's property occurred and the record does not reveal any act that amounted to more than trespassing. Moreover, we reiterate that the *controlling* factor in drawing the line between civil and criminal contempt is the dominant objective of the court's order. We are convinced that the proceedings employed by the trial judge to enforce compliance with the injunction decree in this case were civil in nature.

Orders affirmed.

**4.** Ironically, many residents in the area viewed the Neshaminy Water Diversion Project as detrimental, rather than beneficial, and it was for that reason that these protests occurred.