531 A.2d 2⁻

**CROZER–CHESTER MEDICAL CENTER, a Pennsylvania Not for Profit Corporation, and Reproductive Health and Counseling Center, a Pennsylvania Corporation**

v.

**Thomas MAY, Miriam Andrews, Joan E. Andrews, Robert E. Moran and Mary Ann Moran.**

**Appeal of Gerald LYNCH, et al., Appellants.**

Superior Court of Pennsylvania.

Argued April 22, 1987.

Filed Aug. 21, 1987.

Joseph D. Branca, Aston, for appellants.

Donald T. Petrosa, Media, for Crozer-Chester, appellee.

Donald A. Browns, Media, for Reproductive Health, appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the "Adjudication Of Civil Contempt" entered by the Court of Common Pleas of Delaware County on August 25, 1986, (later reduced to judgment) against forty-eight (48) defendants/appellants.[1] We affirm.

This case stems from a decree nisi entered by the lower court on February 10, 1984, enjoining the five individuals whose names appear in the caption of this case and "all others acting in concert with them" or "otherwise hav[ing] reasonable notice" of the court's decree precluding, in essence, entry onto or remaining upon the premises of the plaintiffs (Crozer-Chester Medical Center and Reproductive Health and Counseling Center) for the purpose of "interfering or accosting individuals seeking services" from the plaintiffs, and procuring others to do the same. The decree nisi was made final following the dismissal of exceptions on November 9, 1984. An appeal to Superior Court resulted in an affirmance of the injunction in its entirety.

1. The names of those defendants/appellants involved in this appeal are:

| | |
|---|---|
| 1. Gerald Lynch | 25. Rita Bucky |
| 2. Howard Walton | 26. Pasquale Varallo |
| 3. David Hoch | 27. Charles Mammucari |
| 4. Dennis Sadler | 28. Roland Markun |
| 5. Debra Baker | 29. Mary Bryne |
| 6. Richard Junod, Dr. | 30. Mary Anne Hayot |
| 7. George Isajiw, Dr. | 31. Anne Marie Breen |
| 8. Harold Stoliker | 32. Patricia McNamara |
| 9. Craig Combs | 33. Ellen Walton |
| 10. Roger Shepard | 34. John Martin |
| 11. Robert Lewis | 35. John O'Brien |
| 12. Walter Gies | 36. Gregory Plata, Priest |
| 13. Margaret Caponi | 37. Dolores McGrail |
| 14. Anne Knorr | 38. Gladys Dougherty |
| 15. Ellen Jones | 39. William Starrs |
| 16. Thomas McIlhenny | 40. Robert Atkinson |
| 17. Thomas Herlihy | 41. Maureen Melly |
| 18. John Stanton | 42. Carolyn Killion |
| 19. Henry Tenaglio | 43. Kathleen Coll |
| 20. Norman Williams | 44. Paul Neal |
| 21. Carl Knapp | 45. James Dempsey |
| 22. Michael McMonagle | 46. Barbara Dempsey |
| 23. Joseph Wall | 47. Rosemary Moran |
| 24. James Breen | 48. Joseph Coll |

On March 29, 1986, counsel for the plaintiffs appeared in court and alleged that the defendants, whose names appear in footnote 1,

> ... acted in violation of the Court's order ... by engaging in ... protest on the property of th[e plaintiffs] ... by actually entering and occupying [one of the plaintiffs'] building[s] .... They ... d[id] it by blocking the doorways and entrances ... and by otherwise acting in a manner which was disruptive to the procedures that were going on at that facility.

The Delaware County Sheriff's Office was called ... [and t]he Defendants were read the injunction [2] and

2. The injunction, in its entirety, reads:

AND NOW, to wit, this 10 day of Feb., 1984, it is hereby ORDERED and DECREED as follows:

1. The Defendants, Thomas J. May, Miriam A. Andrews, Joan E. Andrews, Robert E. Moran and Mary Ann Moran, and each of them and all others acting in concert with them, and all others who may be shown a certified copy of this Court's Decree or to otherwise have reasonable notice of the Court's Decree are enjoined and restrained from:

1. Entering upon or remaining upon the premises of the Plaintiffs in the Borough of Upland, Pennsylvania, for the purposes of in any way interfering or accosting individuals seeking services from the Plaintiffs.

2. Entering or remaining upon any part of the steps, porch or hallway of the building, house or the facility of one of the Plaintiffs, to wit, Reproductive Health and Counseling Center.

3. Entering upon or remaining upon any part of the adjacent private parking lot and sidewalk for the use of the staff, employees, patients, business invitees and guests of the Plaintiffs.

4. From photographing or attempting to photograph any staff member, employee, patient, prospective patient, business invitee or guests of the Plaintiffs while such person is upon, entering or leaving the property of the Plaintiffs, Crozer-Chester Medical Center, and Reproductive Health and Counseling Center at 15th and Upland Avenue in the Borough of Upland.

5. From damaging in any manner the property of the Plaintiffs or interfering with the Plaintiffs' rights to use such property for all lawful purposes.

6. From otherwise acting upon the private property of the Plaintiffs in a manner disruptive or intending to be disruptive of the operation of the Plaintiffs' hospital and counseling services.

7. From procuring another or others to do any of the acts herein enjoined.

8. Any picketing which may be done by these Plaintiffs or others subject to this Decree outside the limits of the private property of

refused to leave. They had to be arrested and removed from the premises.

Based on the aforesaid, which was asserted to be in violation of the court's February 10th decree, counsel for the plaintiffs orally "filed" a petition for contempt against the defendants and asked that it be made returnable from the bench. The court did so and made the rule returnable for April 3, 1986.

Hearings were conducted over a period of two months (i.e., April 3, 11 & May 16, 27, 28 & 29 of 1986), at the conclusion of which the court adjudged the forty-eight defendants named in footnote 1 to be in civil contempt of his February 10, 1984 decree, made final on November 9, 1984, by their conduct on the grounds of the plaintiffs on March 29, 1986.[3] This timely appeal followed.

these Plaintiffs and particularly at the entrance from the public street known as Upland Avenue at its intersection with Seminary Avenue, the private property of the Plaintiffs, shall be limited to ten pickets at any one time and these pickets must be in constant motion at least five feet apart and shall not by any means whatever obstruct ingress and egress to the private property of the Plaintiffs by anyone, whether they be pedestrians or in conveyances.

9. The parties hereto shall bear their own expenses, cost of litigation, counsel fees, and since no damages have been proven in this litigation, neither compensatory nor punitive damages are awarded.

The Office of Judicial Support is directed to enter this Decree Nisi and to give notice thereof to the parties or their counsel of record. If no Exceptions are filed within ten (10) days, this Decree Nisi shall be entered as a Final Decree.

3. The order appealed reads, save for the names of the defendants appended to said order, as follows:

### ADJUDICATION OF CIVIL CONTEMPT

AND NOW, this 25 day of Aug , 1986, upon consideration of the record, the evidence presented at hearings held beginning on April 3, 1986 and concluding May 29, 1986, and the Briefs submitted by counsel, it is hereby

ADJUDGED and DECREED that the Defendants named on the attached list are in civil contempt of this Court by reason of their going onto the property of Plaintiffs and otherwise acting in a manner violative of the Court's Decree Nisi entered February 10, 1984, and Final Decree entered November 9, 1984; the conduct of the Defendants willfully violated the terms and conditions of the Decrees of this Court on March 29, 1986, and it is therefore hereby:

ORDERED:

We note at the outset the appealability of the order in question given the inclusion of sanctions (in the form of a pecuniary penalty) in the court's contempt order. See *Schnabel Associates, Inc. v. Building & Construction Trades Council of Philadelphia and Vicinity, AFL–CIO,* 338 Pa.Super. 376, 487 A.2d 1327 (1985).

The defendants raise six (6) issues for our consideration which, having been preserved by proffering them in the court below, will be discussed *seriatim.*

■ First, the defendants complain that, because they were neither named parties in the injunction nor shown to have acted in concert with the five named parties whose names appear on the face of the injunction, the court erred in holding them in contempt.

The law is quite clear that:

... persons *not* parties to an injunction order are bound to observe its restrictions when those restrictions are known to such persons to the extent that they must not aid and abet its violation by others. In addition, if persons are not parties to the injunction order, but its terms are known to them and they are within the class intended to be restrained, they may not violate the injunction's restrictions.

1. That a conditional fine of $200.00 be imposed upon each of the Defendants; however, each Defendant may purge himself or herself of the contempt and avoid the necessity of paying the fine by staying off the private property of Crozer-Chester Medical Center and Reproductive Health and Counseling Center in accordance with the Court's Decrees referred to above, so long as the Decrees remain in effect;

2. Should sufficient evidence be brought before the Court that any of the Defendants has entered onto the private property of the Plaintiffs subsequent to the date of this Order, in violation of this Court's Decrees, the Court will order immediate payment of the above fine and in default thereof, that Defendant will be sentenced to 15 days in the Delaware County Prison;

3. Said future violation, or any other future violation, may also be the basis for a new Petition for Contempt;

4. This Order shall remain in effect until further Order of this Court.

*Neshaminy Water Resources Auth. v. Del-Aware Unlimited, Inc.*, 332 Pa.Super. 461, 469, 481 A.2d 879, 883 (1984) (Citation omitted; emphasis in original).

With the preceding in mind, our review of the six volumes of testimony, generated during the contempt hearings below, evidences that at approximately 8:00 a.m. on the 29th day of March, 1986, some fifty (50) individuals ("pro-lifers") came onto the private property of the plaintiffs. In particular, the Reproductive Health and Counseling Center (RHCC) was forcibly entered.

Delaware County Deputy Sheriffs Robert Masho and Steven Turek had been assigned by their superiors to the RHCC building "to enforce" the February 10th injunction, and they were on the second floor of the building at 8:00 a.m. When they observed the group making their way to the RHCC, the two Deputy Sheriffs ran down to the first floor lobby and noticed members of the plaintiffs' staff attempting to hold back the group of pro-lifers and telling them to leave.

Deputy Sheriff Masho told those pro-lifers who had made it into the building that they were "in violation of an injunction ... and that if they didn't leave, they might be arrested." The Deputy's repetition of the warning only caused the crowd to push harder against the doors of the RHCC.

Local police arrived on the scene and assisted the Deputy Sheriffs in rounding up those pro-lifers who had gained entry and were running loose in the building and locking themselves in the various examination rooms chanting, singing and praying to stop the abortions taking place on the premises. Needless to say, the plaintiffs' operations were "interrupted" during the presence of the pro-lifers.

Those pro-lifers who left willingly were released, but those who "fought" were arrested (initially 19 in number), placed in the Sheriff's bus and transported to the local station, where they gave their names and addresses as they were being processed and formally charged. (See Exhibit P–10)

At approximately 9:45 a.m., Frank Mitarantonda, Chief Deputy for the Delaware County Sheriff's Department, arrived on the scene, which, as described by one of the Deputy Sheriffs, was still pure "bedlam". After discussing with the other police personnel on the site as to what to do, Chief Deputy Mitarantonda, sometime between 11:00–11:30 a.m., read the court's injunction, save for point 9, over a loudspeaker (with a 100 watt amplifier) resting atop a police vehicle situated about 25–40 yards away from the RHCC building.

When those present and in ear-shot of the loudspeaker refused to leave peaceably, they were arrested and taken to the police station, as was the earlier group, and processed for arrest. And, like the former group of 19 or so pro-lifers, this second group also gave their names and addresses to the police. (See Exhibit P–14)

We conclude that the defendants had actual knowledge of the court order, since it was read to them and orally informed of the same by Deputy Sheriff Masho. Despite this, the defendants acted in concert or combination with others to prevent or interfere with the operation of the plaintiffs' facility. See *Neshaminy,* supra.

The second issue raised by the defendants concerns the claim that their privilege against self-incrimination was violated by comment upon, or consideration of, their failure to testify.

▪ The short-hand response to the argument made is, initially, that the hearings related to whether the defendants were in *civil* contempt, it being the objective of the court below to assure compliance with its order entered " 'primarily for the benefit of a private party.' " *Rulli v. Dunn,* 337 Pa.Super. 613, 616, 487 A.2d 430, 431 (1985), citing *Brocker v. Brocker,* 429 Pa. 513, 522, 241 A.2d 336, 340 (1968). Such being the case, "while a defendant in a civil case may invoke the privilege [of the Fifth Amendment against self-incrimination] and it may not be used against him in any way in a *subsequent criminal prosecution,* the court in the *civil case* may draw any adverse inference

which is reasonable from the assertion of the privilege." *City of Philadelphia v. Kenny,* 28 Pa.Cmwlth. 531, 540–41, 369 A.2d 1343, 1349 (1977), cert. denied, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977) (Emphasis in original).

The defendants' third issue relates to the allegation that the plaintiffs failed to give them written notice of the charges lodged against them, and that these same plaintiffs failed to specify the legal nature of the contempt charge.

■ It is beyond cavil that "formal service of the order upon the alleged violators is not necessary prior to a contempt adjudication, as long as the parties had actual knowledge of the order." *Neshaminy,* supra, 332 Pa.Super. at 470, 481 A.2d at 883.

Instantly, Deputy Sheriff Masho informed the first nineteen (19) to be arrested around 9:00 a.m., after forcing their way into the RHCC building, that they were in violation of a court injunction and would have to leave the premises or face arrest. Knowledge of this communique is evidenced from the Deputy Sheriff's reference to members of the pro-lifers answering back that they knew nothing about any injunction, and they were not leaving because killings were taking place on the premises.

The remaining arrestees/defendants were read the injunction over a loudspeaker by Chief Deputy Mitarantonda, and still the pro-lifers had to be physically removed from the grounds after being asked to disperse or face arrest. Thus, we find, in light of the record evidence on the matter of notice, that the defendants were adequately advised of the existence of a court order prohibiting their presence on the plaintiffs' property for the purposes exhibited by their obstreperous behavior. Accordingly, the defendants will not be heard to plead ignorance of the order or lack of notice of its existence. To so hold would be to take a myopic view of the evidence to the contrary.

■ As for the defendants' fourth argument that the five essential elements to an adjudication of contempt were not being adhered to, i.e., (1) a rule to show cause why attach-

ment should not issue; (2) an answer and hearing; (3) a rule absolute (arrest); (4) a hearing on the contempt citation; and (5) an adjudication of contempt, we disagree.

As noted by the Court in *Rouse Philadelphia Inc. v. Ad Hoc '78, et al.*, 274 Pa.Super. 54, 417 A.2d 1248 (1979), cert. denied, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), the five-step procedure is not necessary in those cases where the contempt proceedings are predicated upon the violation of an order which was served on the contemnor and entered after a full hearing on the merits. When this occurs, contempt proceedings may be commenced by attachment, and due process requires no more than notice be given of the alleged contravention and the opportunity to explain one's defense.

Instantly, the contemnors were given notice as to the charges (i.e., by means of oral confirmation of being in contempt of a court order/injunction by police personnel on March 29, 1986); they were given timely notice and opportunity to answer and defend during the six days of hearings; and the proceedings are determined by this Court to have been fair and impartial. This is all that is required under the law, and no deviation having taken place herein as to those procedural matters requires that we deny the defendants' due process complaint. See *Neshaminy*, supra.

The defendants' two remaining issues, i.e., the plaintiffs' alleged deliberate violation of the court's sequestration order during the hearings and an assault on the sufficiency of the evidence, are not meritorious.

As to the purported intentional violation of the sequestration order by two of the numerous witnesses who testified on the notice element of the injunction to the plaintiffs, suffice it to say that the evidence of contempt was overwhelming, and, thus, any possible effect a deviation of the sequestration order could have had on the outcome of the case is *de minimus*. Cf. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Order affirmed.